509 P.2d 788

**TWIN FALLS CONSTRUCTION CO., an Idaho corporation, Plaintiff-Respondent,**

v.

**OPERATING ENGINEERS LOCAL #370 et al., Defendants-Appellants.**

**No. 11048.**

Supreme Court of Idaho.

Jan. 4, 1973.

Rehearing Denied Feb. 1, 1973.

Clarence M. Beck, Robert D. Crofts, Salt Lake City, Utah, Webb, Pike, Burton & Carlson, Twin Falls, for defendants-appellants.

Weston & Weston, Boise, Benoit, Benoit & Alexander, Twin Falls, for plaintiff-respondent.

DONALDSON, Chief Justice.

This is an appeal by two labor union locals from an order of the district court enjoining them from picketing the respondent construction company.

In February, 1970, the respondent Twin Falls Construction Company entered into a

contract with the State of Idaho whereby it agreed to construct portions of an interstate highway in Twin Falls County. As part of the contract, the respondent was required to adhere to a *minimum* wage scale set by the U.S. Secretary of Labor. The respondent does not have a collective bargaining agreement with either of the appellant unions or with any other labor organization. Between February, 1970, and August, 1971, union contractors in the area twice raised the wages payable to their construction workers; because of its nonunion status, the respondent maintained its wages at the level provided for in its contract, despite the two increases in the union wage scale.

On August 27, 1971, a single picket, carrying a sign which stated that the respondent does not provide standard wages and benefits to its employees, began picketing at the project site. As a result, work on the project came to a standstill when employees of the respondent and of its subcontractors refused to cross the picket line. The respondent thereupon filed a complaint in which it alleged that it was in the business of highway construction; that it was then engaged in performing its agreement to construct an Idaho federal aid project; that a representative of the defendant labor organizations began picketing said project on August 21, 1971; that as a result of the picketing, work on the project had come to a standstill; and that the picketing in question was unlawful under federal and state law. In its complaint, the respondent prayed for injunctive relief and for damages in the amount of $25,000. At the same time, the respondent filed an application for a temporary injunction on the ground that irreparable injury might result unless such relief was granted. Concluding that such injury might result before the matter could be heard, the district court issued a temporary injunction and an order to show cause why the injunction should not be continued during the pendency of the action.

After a hearing on the propriety of granting an injunction pendente lite, the district court concluded that: (1) The purpose sought to be achieved by the picketing was to induce the respondent to raise its wages, which was an unlawful objective because such would be in violation of the ninety-day price freeze proclaimed by the President on August 17, 1971; (2) the court had jurisdiction because the objective of the picketing was unlawful; and (3) an injunction against the picketing was permissible under Idaho law because no "labor dispute" existed. On appeal, the appellants request that the order of the district court granting injunctive relief be reversed.

The type of picketing involved in this case may be characterized as peaceful "area standards" picketing by "strangers"; in other words, this informational picketing was conducted by nonemployees to publicize a nonunion employer's substandard wages, with the probable ultimate purpose of inducing the employer to raise its wage rates up to the union scale prevailing in the area.

The appellants contend that peaceful picketing by nonemployees is protected by the first and fourteenth amendments to the United States Constitution and that the injunction issued by the district court violates their right of free speech. The respondent replies that peaceful picketing for an unlawful objective is not within the constitutional protection of free speech and that the purpose of the appellants' picketing was to force the respondent to unlawfully raise its wages. The issue thus joined, upon which this decision ultimately turns, is whether the trial court correctly concluded that the appellants were picketing for an unlawful objective.

In holding unconstitutional an injunction based solely upon the absence of an employer-employee relationship, the United States Supreme Court, in A.F.L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941), used the following language, which indicates the broad scope of free-speech protection afforded to peaceful picketing:

"All that we have before us, then, is an instance of 'peaceful persuasion' dis-

entangled from violence and free from 'picketing en masse or otherwise conducted' so as to occasion 'imminent and aggravated danger'. Thornhill v. Alabama, 310 U.S. 88, 105, 60 S.Ct. 736, 746, 84 L.Ed. 1093. We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

Such a ban of free communication is inconsistent with the guarantee of fredom of speech. * * * A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. American Steel Foundries v. Tri-City Council, 257 U.S. 184, 209, 42 S.Ct. 72, 78, 66 L.Ed. 189, 27 A.L.R. 360. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case.

'Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.' Senn v. Tile Layers Union, 301 U.S. 468, 478, 57 S.Ct. 857, 862, 81 L.Ed. 1229." 312 U.S. at 325–326, 61 S.Ct. at 570; *accord* Amalgamated Food Employees Union, Local 590 v. Logan Valley Plaza, Inc., 391 U. S. 308, 313, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968).

The district court noted that Idaho statutes expressly prohibit an injunction of picketing only when its purpose is to publicize any dispute between an employer *and the majority of his employees. See* C. H. Elle Construction Co. v. Pocatello Building & Construction Trades Council, 77 Idaho 514, 78 Idaho 1, 297 P.2d 519 (1956) (construing I.C. § 44–703(e)[1] to incorporate the definition of labor dispute contained in I.C. § 44–712[2]), rev'd mem., 352 U.S. 884, 77 S.Ct. 130, 1 L.Ed.2d 82 (1956), on authority of Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955) (state court jurisdiction preempted by authority vested in N.L.R.B.).

■ The respondent's reliance upon these Idaho statutes is misplaced. Although they do not prohibit the enjoining of picketing to publicize a dispute between an employer and union members who are not his employees, an injunction of such picketing is clearly proscribed by A.F.L. v. Swing, *supra,* if its issuance is based solely upon the absence of an employer-employee

---

1. "44–703. *Injunctions—Restrictions on issuance.*—No court, nor any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person or persons from doing, whether singly or in concert any of the following acts:

 * * * * * * * *

 (e) Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any

place where any person or persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof."

2. "44–712. *Labor dispute defined.*—The term 'labor dispute' means any controversy between an employer and the majority of his employees in a collective bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives."

relationship. The most that can be said is that although Idaho's statutes do not prohibit such an injunction, the Constitution does. Furthermore, the U. S. Supreme Court has specifically held unconstitutional an injunction based solely upon the absence of a "labor dispute" within the meaning of state statutes; in doing so the Court noted that: "one need not be in a 'labor dispute' as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive." Bakery and Pastry Drivers and Helpers, Local 802 v. Wohl, 315 U.S. 769, 774, 62 S.Ct. 816, 818, 86 L.Ed. 1178 (1942).

 However, as the above-quoted statement from *Swing* itself suggests, the free-speech protection afforded to peaceful informational picketing is not absolute or unlimited. As the respondent correctly points out, peaceful picketing for an objective unlawful under federal law or state public policy is not within the constitutional protection of free speech. CCH Labor Law Reports, ¶ 5120 (1972). Thus, where informational picketing is conducted not only to publicize nonunion conditions but also to achieve an unlawful objective, such picketing may be enjoined without infringing upon the free-speech guarantee of the first amendment. International Bhd. of Teamsters, Local 695, A.F.L. v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 945 (1957) (peaceful picketing aimed at preventing effectuation of state public policy); McLeod v. Local 239, Int'l Bhd. of Teamsters, 179 F.Supp. 481 (E.D.N.Y. 1960) (objective unlawful under federal statute); Phillips v. International Ladies Garment Workers Union, AFL–CIO, 38 LC ¶ 66,051 (M.D.Tenn.1959); *see* Knapp v. United Bhd. of Carpenters, AFL–CIO, 53 LC ¶ 11,266 (W.D.Wis.1965).

 The Davis-Bacon Act (40 U.S. C.A. § 276a et seq.) requires only that the wages of workmen on a federal construction project shall be not less than those prevailing in the community at or before the time of execution of the contract between the government and the contractor; the Act does not require payment of wages higher than those specified in the contract if the Secretary of Labor subsequently determines that such higher wages are then prevailing in the area. Bushman Constr. Co. v. United States, 164 F.Supp. 239, 240, 143 Ct.Cl. 264 (1958) (dicta); see United States v. Binghamton Constr. Co., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954). From the commencement of work on the federal project in the latter part of 1970 until the proclamation of the "phase one" wage-price freeze, the respondent adhered to the minimum wage rates specified in its contract with the government. Therefore, during the period from July 16, 1971, to August 14, 1971 (the phase-one-freeze "base period"), the respondent was apparently still paying these rates, despite the fact that its wages were lower than those then prevailing in the area. The ninety-day phase one freeze was in effect when the appellants conducted their picketing of the respondent. One of the general guidelines promulgated to implement phase one provided as follows:

"No employer shall pay and no employee shall receive a wage, salary, or other form of compensation at a rate higher than paid or received or in effect during the base period, *nor shall any person use any means to obtain payment of wages, salaries or other form of compensation higher than those permitted* under the Executive Order or the Regulation. Such remuneration shall be based upon a substantial number of actual transactions for services of like or similar nature." Economic Stabilization Circular No. 101, § 501(1), 36 Fed.Reg. 18739, reprinted in PH Government Control of Business ¶ 4137.1 (emphasis added); *cf.* Economic Stabilization Circular No. 102, §§ 502(15), (21), 36 Fed.Reg. 20482, reprinted in PH, *supra* ¶¶ 4241.15, 4241.21.

Hence, it appears that any picketing to obtain the payment, *during* the ninety-day freeze, of wages at a rate higher than paid

during the base period was specifically proscribed by the above-quoted regulation. However, this prohibition did not make unlawful picketing to obtain the payment, *after* the termination of the ninety-day freeze, of higher wages for services rendered after phase one was over. That this is so can be inferred from one of the specific guidelines promulgated to supplement the general guidelines:

"The freeze does not require termination of bargaining for wage changes during the 90-day freeze period. However, no wage increase negotiated during the 90-day period can apply to the period of the freeze nor can it go into effect during the period of the freeze." Economic Stabilization Circular No. 101, § 502(3), 36 Fed.Reg. 18739, reprinted in PH Government Control of Business ¶ 4139.3.

■ The alternative objects which might arguably be ascribed to the picketing involved in this case are:

(1) To inform the public that the respondent's employees were working for substandard wages and benefits. This is the purpose claimed by the appellants, who point out that their placards did not request any specific action on the respondent's part but rather simply stated that the company did not provide standard wages and benefits to its employees.

(2) To induce the respondent to immediately raise its wages up to the level paid by union employers. The district court concluded that this was the appellants' objective. Such a purpose would have been proscribed under federal regulations, as indicated above.

(3) To induce the respondent to pay higher wages when that was legally possible (i.e., after the termination of the ninety-day freeze). This would have been a permissible purpose.

Only object (2) can be classified as unlawful. Although the record would support a finding that one of the appellants' purposes was to induce the respondent to pay higher wages, we can find no evidence in the record to support the further conclusion that the appellants were insisting upon an immediate (and therefore unlawful) increase in the wage rates adhered to by the respondent. The appellants' picketing is at least equally referable to the object of inducing the respondent to pay higher wages *when that became legally possible.* No conduct of the appellants was inconsistent with the lawful object suggested here. In light of the weighty free-speech values inherent in peaceful informational picketing, an unlawful objective should not be ascribed to it unless such a purpose is clearly apparent. We conclude that in this case there is insufficient evidence to sustain the finding of an unlawful objective. Since this was the only constitutionally permissible basis for the district court's injunction, its order must be reversed.

The conclusion we have reached makes it unnecessary to discuss the appellants' further contention that state jurisdiction in this case was preempted by the authority vested in the National Labor Relations Board by Congress. Moreover, as the respondent correctly points out, there is nothing in the record to indicate that any of the N.L.R.B.'s current jurisdictional yardsticks were met in this case; and state tribunals may take cases not meeting these tests. CCH Labor Law Reports, ¶ 1610, at 5407 (1972).[3]

Order reversed. Costs to appellants.

McQUADE, McFADDEN, and BAKES, JJ., concur.

SHEPARD, Justice (dissenting).

I dissent from the conclusion reached by the majority opinion. Baldly stated, this case involves a highway construction con-

---

3. For a comprehensive review of current developments in the law of federal preemption, see our recently released decision in Simpkins v. Southwestern Idaho Painters District Council No. 57, Idaho, 505 P. 2d 313 (1973), wherein this Court examines in some detail the jurisdictional relationship between state courts and the National Labor Relations Board.

tractor engaged in the construction of a state highway project under contract with the State of Idaho. As a part of that contract, the construction was required to be completed within a certain period of time and if not so completed penalties were imposed upon the construction company. Also as a part of the contract, the construction company was required to pay its employees wage rates then prevailing in that area as determined by the Secretary of Labor. The contractor did so pay such a prevailing wage scale. The contractor, under the then prevailing federal regulations, was unable to increase the wage scale. The appellant, which was not the bargaining agent for any of the contractor's employees, picketed the construction project and urged the employees not to work. The employees refused to work and the construction project was shut down.

The plaintiff was then faced with the following dilemma. It could allow the project to remain shut down, thus violating its contract with the State of Idaho, or pay higher wages to its employees in violation of the then applicable federal regulations.

The majority opinion correctly states the general rule of A. F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941), to the effect that peaceful picketing even in the absence of an employer-employee relationship is a constitutionally protected right. An exception to the rule, however, is that if such picketing has an unlawful objective then it is not a constitutionally protected activity. As correctly stated by the majority opinion, the issue upon which this decision turns is whether the trial court correctly concluded that the appellants were picketing for an unlawful objective.

The majority opinion states three possible alternative objectives of the picketing. I do not agree with the first alternative posed by the majority opinion, i. e., that the sole purpose was to inform the public that the company did not provide "standard" wages and benefits to its employees. It is uncontroverted in the record that the pickets urged the employees not to work,

that the employees refused to work and that their refusal was based on their desire for higher wages. In my judgment the only question is whether this court should indulge in an assumption of intention on the part of the appellants which is nowhere sustained in the record. The majority opinion assumes that the intention and objective of the appellant *could have been* to induce the respondent to pay higher wages when that was legally possible, i. e., after the termination of the 90 day freeze. The entire thrust of the hearing conducted by the trial court was otherwise. The attorneys for the respondent in questioning of the executive officer of the contractor attempted to persuade him and the court that wages could have been raised during the time in question. The appellant's attorney attempted to introduce defendant's exhibit 2 as a statement from the Office of Emergency Preparedness to the effect that wages could be raised. The business agent of the union and one of the employees stated that the purpose of the employees leaving their work was to obtain higher wages. At no time was any person asked the objective of the picketing, nor did any witness even infer that the objective was to secure higher wages when such became legally possible. I find no support in the record for the assumption indulged in by the majority opinion that the purpose and objective of the appellant was to secure higher wages at a future time and therefore lawful.

From time immemorial this court has ruled that the exercise of discretion by the trial court in granting or refusing a temporary injunction will not be reversed on appeal unless a *clear* abuse of discretion is shown. Utility Light & Power Co. v. City of Burley, 83 Idaho 285, 361 P.2d 788 (1961), and cases cited therein.

This court now holds that the trial judge herein *clearly* abused his discretion in failing to rule on the basis of a possible theory not presented or argued before him and which in my judgment finds no support in the record. The action of the trial court should be affirmed.