567 P.2d 830

SCHOOL DISTRICT NO. 351 ONEIDA COUNTY, Idaho, a Municipal Corporation, Plaintiff-Respondent,

v.

ONEIDA EDUCATION ASSOCIATION, and its President, Carol Dawn Willie, Defendants-Appellants.

Nos. 12154, 12213.

Supreme Court of Idaho.

July 22, 1977.

Robert C. Huntley, Jr., of Racine, Huntley & Olson, Pocatello, Byron J. Johnson, of Webb, Johnson, Redford & Greener, Boise, for defendants-appellants.

Wesley F. Merrill, of Merrill & Merrill, Pocatello, for plaintiff-respondent.

Robert A. Bushnell, Jr., Green & Cantrell, Boise, for amicus curiae.

SHEPARD, Justice.

This case is a consolidated appeal of two orders of the lower court each involving the same parties, the same factual circumstances and essentially the same issues of law. One appeal is from the issuance of a preliminary injunction enjoining defendants-appellants Oneida Education Association and its president Carol Dawn Willie from striking or picketing any of the schools of plaintiff-respondent School District No. 351, Oneida County, Idaho. The second appeal is from the order of the lower court making that preliminary injunction permanent. The questions presented are whether there is a right in public employees and particularly teachers to strike against a governmental employer; whether such a strike for any purpose is illegal; whether or not the provisions of Idaho statutes prohibiting the issuance of injunctions in labor disputes are

applicable to situations involving teacher-public employees; whether or not the issuance of the preliminary injunction constituted an abuse of discretion in that the traditional statutory and common law standards were not complied with prior to the issuance of the injunction; and whether the permanent injunction was likewise an abuse of discretion and whether it was overly broad.

The Oneida Education Association is a "local education association" with the meaning of Idaho's Professional Negotiations Act, I.C. §§ 33–1271–76 and was the representative of the teacher employees of School District No. 351. On February 6, 1975, representatives of the Association met with the Board of the School District to initiate negotiations, but the Board stated that it would not negotiate until after the then sitting legislature had recessed. Although thereafter the legislature recessed, no further negotiations took place and the Association during May 1975 served formal notice on the school district of its desire to enter negotiations for the school year 1975–76 and pursuant to the provisions of the Professional Negotiations Act.

The Association and the district negotiated the terms of the *procedural* agreement which was ratified by both parties on October 1, 1975. That procedural agreement only set forth agreement on procedures to be utilized in seeking to reach later agreement on substantive issues such as wages and conditions of employment. The parties then attempted but failed to reach any agreement on the substantive issues. The Association then notified the school district that members of the Association would be going on strike and refusing to report for work on or about October 15, 1975.

Thereupon the school district filed its complaint alleging that the threatened action of the Association would be a breach of the procedural agreement and the contracts of the individual members of the Association theretofore entered into with the district and that the threatened strike would cause irreparable harm and damage. The district prayed for injunctive relief to prevent the striking and picketing of the school district's system and schools. The Association answered and on October 24, 1975, a hearing was held to consider issuance of the injunction sought by the school district.

At that hearing, no testimony was required or permitted either in support of or opposition to the issuance of the injunction and the court ruled as a matter of law that the injunction should issue. The Association then made an offer of proof of the testimony and evidence that it would offer in resistance to the issuance of the injunction. That offer was made a portion of the record and is before us. The court issued the preliminary injunction and following an additional non-evidentiary hearing on January 7, 1976, the court "permanently enjoined" the Association, its members and president from striking against or picketing the operation of the school district. Appeal is taken both from the issuance of the temporary injunction and the issuance of the permanent injunction.

▪ At the outset the respondent school district asserts that this appeal should be dismissed inasmuch as the controversy has become moot. It argues that the school year in which the strike occurred has ended and the members of the appellant Association have executed and worked under a new contract for the subsequent school year. We disagree. While in a sense the major controversy has been resolved by the passage of time, the permanent injunction remains in effect and forbids members of the Association to strike and the terms of that injunction are not restricted as to time. We note further that the legal questions presented are of first impression in this state, are of substantial public interest and there are almost yearly disputes between some of the 115 school districts in the state of Idaho and organizations similar to appellant's. Also we note that appellant has alleged the failure of the respondent to comply with Idaho's Professional Negotiations Act (I.C. § 33–1271 et seq.) and the effect of said refusal by the respondent on the jurisdiction of the trial court to issue

injunctive relief. That question also is of substantial public moment and interest. For all of the above reasons we reject the invitation of respondent school district to dismiss for mootness. *Nelson v. Marshall,* 94 Idaho 726, 497 P.2d 47 (1972); *Robinson v. Bodily,* 97 Idaho 199, 541 P.2d 623 (1975). *See also, School Committee v. Westerly Teachers Assoc.,* 111 R.I. 96, 299 A.2d 441 (1973); *Nat'l Electric Contractors Assoc. v. Seattle School Dist. No. 1,* 66 Wash.2d 14, 400 P.2d 778 (1965).

### I.

Appellants argue first that as public employees they have a right to strike which is guaranteed by the Constitution and cannot be abridged. They also argue that any attempt to deny them the right to strike as contrasted with the right to strike by employees in the private sector would be a deprivation of equal protection. We disagree. *School Dist. of Town of Westerly v. Westerly Teachers Assoc.,* 111 R.I. 96, 299 A.2d 441 (1973). *See also,* cases collected in Annot., 37 A.L.R.3d 1147 (1971). For a contra view, *see Anderson Fed. of Teachers v. Anderson,* 252 Ind. 558, 251 N.E.2d 15 (1969) (dissent by DeBruler).

### II.

Appellants next argue that the Idaho Professional Negotiations Act, I.C. § 33–1271 et. seq., inferentially grants public school teachers in the state of Idaho the right to strike since the right to strike is not expressly prohibited in that Act. We disagree. As previously noted, we find no constitutionally guaranteed right to strike in public employees and no such right existed at common law. The common law is in effect in Idaho unless otherwise expressly abrogated by statute. I.C. § 73–116; *Industrial Indem. Co. v. Columbia Basin Steel & Iron, Inc.,* 93 Idaho 719, 471 P.2d 574 (1970); *Kelly v. Easton,* 35 Idaho 340, 207 P.2d 129 (1922).

Appellants assert that the legislature has expressly prohibited strikes by firefighters, I.C. § 44–1811 and argue therefrom that the legislature must have intended to permit strikes by teacher-public employees, otherwise it would have prohibited those strikes as it prohibited strikes by firefighters. We do not agree. *School Comm. v. Westerly Teachers Assoc., supra.* The legislature may well have believed that the substantial difference between the duties performed by firefighters vis a vis teachers required the express legislative prohibition against strikes by firefighters and that the common law remedies available against strikes by teachers were adequate and that strikes by teachers could be prohibited but only following adequate hearings.

### III.

Appellants next assert that the trial court erred in not giving effect to Idaho statutes governing the issuance of injunctive relief in labor disputes, I.C. § 44–701–712 and conforming its actions to the legislative restraints set forth by those statutes together with decisions of this Court, such as *Twin Falls Constr. Co. v. Operating Engineers Local 370,* 95 Idaho 370, 509 P.2d 788 (1973). This Court has held that general statutes dealing with labor controversies and the duties of public officials thereunder are "insufficient to indicate a legislative intent that the government should fall within the statutory coverage. Legislative acts are normally directed to activities in the private sector of society and effect a modification, limitation, or extension of the private individual's rights and duties." *Local Union 283 Intn'l Brotherhood of Elec. Workers v. Robison,* 91 Idaho 445, 423 P.2d 999 (1967). *See also, School Committee v. Westerly Teachers Assoc., supra; Board of Education v. Redding,* 32 Ill.2d 567, 207 N.E.2d 427 (1965); *City of Minot v. General Drivers,* 142 N.W.2d 612 (N.D.1966); *Anderson Fed. of Teachers v. Anderson, supra; United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

### IV.

We come then to the essence of the case as stated by appellants, "assuming arguen-

do, that teacher strikes are illegal and further, that the anti-injunction act does not apply to such strikes, an injunction still should not issue unless the traditional prerequisites for the granting of such equitable relief exists."

In 1971 the Idaho legislature enacted the Professional Negotiations Act authorizing negotiation agreements between school boards and their professional employees, I.C. § 33–1271, and providing for mediation and fact finding procedures for resolution of impasse situations. It is strenuously argued by appellants, that the respondent school board has failed, neglected and refused to engage in those requisite statutory procedures. Appellants assert that they sought utilization of the statutory impasse procedures and that the respondent school board acted in bad faith in their abrupt termination of the statutory proceedings and resort to court action which resulted in the injunctive orders of the court. They argue that such lack of good faith is apparent from the Board's early attitude in the proceedings, that there were absolutely no financial resources available to grant the teachers a raise in pay, but following the intervention of a mediator, the sudden discovery of enough money to grant each teacher a $400–500 per year raise; the insistance of the Board that the teachers were governed by the salary conditions set forth in contracts between each individual teacher and the Board as contrasted with the ruling of the trial court that those individual contracts were conditional only since the later procedural agreement entered into between the Board and the appellants indicated that the individual contracts of the teachers were deemed supplemented by the terms of the procedural agreement; that the Board refused a meeting with the appellants almost on the eve of the threatened strike action; that following the issuance of the initial injunction, the Board continued to refuse compliance with the statutory impasse proceedings until upon motion of the appellants they were ordered to so comply by the district court.

As to heretofore indicated, the trial court permitted the appellants to introduce no testimony in support of any defense they might have to the issuance of the injunction. Hence, the above assertions of the appellant are before us only by way of its offer of proof made before the trial court and preserved in the record here. Those assertions and allegations were not proven and we express no opinion as to their validity except to note the later issuance of the order by the trial court requiring the school district to engage in the mediation and fact finding procedures.

The trial court ruled as a *matter of law* that the injunction should issue and we must assume, in the absence of any evidentiary record, that he concluded that a strike by teachers is illegal in Idaho. Assuming without deciding that he was correct in this conclusion, nevertheless, mere illegality of an act does not require the automatic issuance of an injunction. *Anderson v. Trimble,* 519 P.2d 1352 (Okl.1974) cert. denied, 419 U.S. 995, 95 S.Ct. 308, 42 L.Ed.2d 269; *Nathan H. Schur, Inc. v. City of Santa Monica,* 47 Cal.2d 11, 300 P.2d 831 (1956); *State v. Davis,* 65 N.M. 128, 333 P.2d 613 (1958); *Eckdahl v. Hurwitz,* 103 P.2d 161 (Wyo.1940). Contra, *Kleinjans v. Lombardi,* 478 P.2d 320 (Hawaii 1970). *See, Carroll v. President & Commissioners of Princess Ann,* 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968).

That logic has been expressly applied to situations involving teacher strikes and the automatic issuance of an injunction has been refused and condemned. *School Dist. for City of Holland v. Holland Educ. Assoc.,* 380 Mich. 314, 157 N.W.2d 206 (1968); *School Com. v. Westerly Teachers Assoc., supra; Timberlane School Dist. v. Timberlane Educ. Assoc.,* 114 N.H. 245, 317 A.2d 555 (1974).

In the private sector the right to strike is viewed as an integral and necessary part of the collective bargaining process. However, in the public sector the denial of the right to strike has the effect of weighing the scales heavily in favor of the government during the collective bargaining process. In Idaho our legislature has made the

policy judgment as to the merits of *not* providing public employees with the right to strike. Rather, it has developed statutory alternative processes to resolve labor disputes between teachers and school boards. It would not be an appropriate judicial function to fault the legislature in those determinations.

█ We cannot ignore an *alleged* refusal to abide by and engage in those legislatively authorized procedures for resolution of impasse situations. While neither we nor the trial court should condone or approve the calling of an illegal strike by appellants (although the record does not appear to demonstrate actual engagement in strike and picketing procedures), neither should we or a trial court condone or approve the failure to abide by and utilize the statutorily prescribed procedures for possible resolution of the problem. It has long been a basic maxim of equity that one who seeks equitable relief must enter the court with clean hands.

█ We hold that the trial court erred in issuing the orders complained of here in what was effectively an ex parte proceeding. If testimony had been permitted and required and the trial court had accepted as correct the allegations of the appellant regarding the bad faith of the school board, he might have issued the injunction, but also as a corollary thereof required the school board to engage in the statutorily mandated impasse procedure. Such order did issue but not for some months following the issuance of the preliminary injunction.

Since the dispute between the parties and the threatened strike which resulted from non-resolution of that dispute has ended we see no necessity for a remand for further proceedings. We reverse the orders of the trial court, remand the cause and order that the temporary and permanent injunctions be dissolved. No costs allowed.

McFADDEN, C. J., and DONALDSON, J., concur.

BISTLINE, Justice, concurring.

I concur in the majority's conclusion that before an injunction may issue, the district court must hold a hearing at which both the teachers' union and the school board may present their cases.

The majority addresses the question of whether public employees such as teachers have a constitutionally protected right to strike which may never be abridged under any circumstances. I concur in the majority's conclusion that *that* question must be answered in the negative—though not for the reasons cited by the majority. If, as a matter of law, the teachers had an absolute right to strike, then an injunction could never issue and the hearing procedures mandated by today's opinion would never come into play.

The question actually raised by the teachers on this appeal, however, is whether such public employees, under any conceivable circumstances, ever have a right to strike. A negative answer to this question of law, as Judge Rasmussen clearly perceived below, would likewise render unnecessary the hearing procedures mandated by today's opinion. Such a *per se* rule would also be an unwise policy for this Court to adopt in the absence of an express statutory requirement that we do so:

"I think it is a very unwise policy to allow a trial court to enjoin a peaceful strike, in the absence of any way to insure that the underlying dispute will be discussed and settled amicably. To prohibit a strike in a context where this amounts to ending any pressure on the employer to bargain in good faith with representatives of the employees is to invite arbitrary action by the employer, illegal strikes, violence, and bitter feelings which may do longlasting damage to the community." *Anderson Federation of Teachers v. Anderson*, 252 Ind. 558, 251 N.E.2d 15, 22 (1969), (Chief Justice DeBruler, dissenting).

It seems clear, therefore, that the question is not to be answered in the negative. The authorities relied upon by the majority make it clear that the equitable remedy of an injunction should issue only after all parties have been heard and the district

court has considered whether recognized methods of settlement have failed, whether negotiations were conducted in good faith, and whether the public health, safety and welfare would be substantially harmed if the strike were allowed to continue. An injunction will then issue if the district court determines that the disruption of a strike would, under the circumstances, be so great as to warrant overriding the legitimate interest of the striking public employees in having an effective means to insure good-faith bargaining by their employer. *See also, School Dist. v. Holland Education Asso.*, 380 Mich. 314, 157 N.W.2d 206 (1968); *Timberlane Regional School Dist. v. Timberlane Regional Education Asso.*, 114 N.H. 245, 317 A.2d 555 (1974); *Armstrong Education Asso. v. Armstrong School Dist.*, 5 Pa. Cmwlth. 378, 291 A.2d 120 (1972). It is upon this understanding of today's opinion that I base my concurrence.

BAKES, J., concurring in the judgment and dissenting in part:

I concur in the judgment in Part IV of the majority opinion which holds that the trial court committed reversible error by entering the injunctions under the circumstances of this case. However, I disagree with the reasoning and the law expressed in Part II of the majority opinion.

Regarding Part II and the legality of teachers' strikes, it seems to me that the majority is saying that teachers' strikes are prohibited, i. e., that they are illegal, although that point is not entirely clear. But there is no Idaho statute which prohibits a strike by public school teachers. Although I.C. § 33–1271 provides for labor negotiations by public school teachers, that statute says nothing about strikes. In contrast, the statute which provides for labor negotiations by firefighters expressly prohibits strikes by firefighters. I.C. § 44–1811. In the absence of a direct statutory prohibition, what basis is there for saying that teachers' strikes are illegal?

The majority, pursuant to I.C. § 73–116, looks to the common law for the applicable rule, concluding that at common law public employees had no right to strike and that therefore the public school teachers today in this state have no right to strike. Although the majority opinion cites no authority for that common law rule, some courts have indicated that at common law no employee—public or private—had a right to strike in concert with fellow workers and that such collective action was often held to be an illegal conspiracy. However, with the passage of Section 7 of the National Labor Relations Act, 49 Stat. 449, 452, 29 U.S.C. § 157 (1935), the conspiracy element was removed and the private employee's right to strike became fully protected. *International Union, U. A. W. A., A. F. of L. Local 232 v. Wisconsin Employment Relations Board*, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1948). Nevertheless, some courts have continued to hold that the common law rule was not abrogated with respect to public employees. *School Committee v. Westerly Teachers Assn.*, 111 R.I. 96, 299 A.2d 441 (1973); *United Federation of Postal Clerks v. Blount*, D.C., 323 F.Supp. 879 (1971).

Even assuming that at common law public employees did not have the right to strike, that rule does not, by virtue of I.C. § 73–116, become *ipso facto* the controlling rule of law in this state. Long ago this Court stated with reference to the precursor of I.C. § 73–116:

"By the adoption of that section this state did not adopt the common law of England when such common law was inapplicable to the conditions of the state. The territory and state of Idaho, following the lead of other states having similar statutory provisions, only adopted such provisions of the common law as were applicable to the conditions of the state." *Northern Pacific Ry. Co. v. Hirzel*, 29 Idaho 438, 161 P. 854 (1916).

Moreover, the common law was not composed of unalterable or immutable rules which survived the reasons or conditions on which they were founded. Common law rules were flexible and evolving rules which adapted to changing social conditions and practical realities of the times. That was the genius of the common law. R. Pound,

The Spirit of the Common Law, ch. VIII (1921). In *Good v. Good,* 79 Idaho 119, 311 P.2d 756 (1957), this Court stated:

"[I]t does not follow that the rule of the common law must forever remain fixed and unyielding in all cases and under all circumstances. The contention ignores or denies one of the basic virtues of the common law system. The common law is not immutable. It is a flexible legal system capable of expansion and change necessary to meet new and changed problems and conditions, or to meet a new or altered public policy evolving from such changed conditions in an expanding and developing social order." 79 Idaho at 123–124, 311 P.2d at 759.

*See also Funk v. United States,* 290 U.S. 371, 54 S.Ct. 212 (1933).

The changing rights of women is a good example of this common law flexibility. The common law rule regarding the legal rights of married women was, in essence that the husband and the wife were one in the law—that one being the husband. The legal existence of the woman was suspended during marriage. Blackstone, Commentaries, 189 (B. Cavit ed. 1941). The changes which have evolved in the common law rights of women are apparent—and most recently dramatic. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed. 225 (1971); *Turner v. Dept. of Employment Sec., Etc.,* 423 U.S. 44, 96 S.Ct. 249 (1975); *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Harrigfeld v. District Court of Seventh Jud. Dist.,* 95 Idaho 540, 511 P.2d 822 (1973). *Cf. Williams v. Paxton,* 98 Idaho 155, 559 P.2d 1123 (1977). If we were today confronted with a gap in our statute regarding the rights of married women this Court would certainly not feel bound through I.C. § 73-116 to impose the old common law rule on women in our present society. Why then has the majority reached back into antiquity to resurrect the common law anti-strike/conspiracy rule which is equally as outmoded?

The relationship between employers and workers is very different today from that in which the common law rule against strikes by workers developed. Today, collective bargaining between employers and employees in the private sector is protected—even mandated under most circumstances—by federal law. Similarly, our legislature has expressly provided for labor negotiations between public school teachers and the school districts. I.C. §§ 33–1271 *et seq.* It is also a practical and historical fact of life thoroughly recognized by judicial decisions, that the strike, or at least a threat to strike, is what brings the employees' interests to bear upon the employer. *American Steel Foundries v. Tri-City Council,* 257 U.S. 184, 209, 42 S.Ct. 72, 78, 66 L.Ed. 189 (1921). *N. L. R. B. v. Erie Resistor Corp.,* 373 U.S. 221, 233–234, 83 S.Ct. 1139, 1148, 10 L.Ed.2d 308 (1963). A labor organization that can make no credible threat to strike is simply impotent in labor negotiations.

After concluding that strikes by school teachers are prohibited and illegal the majority equivocates, it seems to me, suggesting that the trial court did not have to grant an injunction for the "illegal strike" of the school teachers if it found that the school board was acting in bad faith, citing the "basic maxim of equity that one who seeks equitable relief must enter the court with clean hands." *Ante* at 835. There is some authority for the proposition that school boards must negotiate in good faith in order to obtain an injunction to prohibit a strike as shown by the following quote from *Timberlane Regular School Dist. v. Timberlane Regular Education Assn.,* 114 N.H. 245, 317 A.2d 555 (1974):

"Accordingly, it is our view that in deciding to withhold an injunction the trial court may properly consider among other factors whether recognized methods of settlement have failed, whether negotiations have been conducted in good faith, and whether the public health, safety and welfare will be substantially harmed if the strike is allowed to continue." 317 A.2d at 559.

It seems to me that the problem is compounded by this line of reasoning. Thus, now by mandate of this Court, not only can

teachers not strike, but by judicial *fiat,* school boards must now negotiate in good faith or lose the availability of a court injunction.[1] This effectively means that the final arbiters in wage negotiations between teachers and school districts are going to be the courts who must decide whether the parties are negotiating in good faith, imposing or withholding the court's injunctive powers based upon the outcome of that finding. I doubt the wisdom of placing the courts in such a position. It is not every social ill which can be resolved by the courts. It is my considered view that, in the absence of legislation holding otherwise, our society would be better served in most instances by a rule which permitted teachers to strike and school boards to negotiate within the statutory framework, whether in good or bad faith, letting economic and other social factors finally forge the conclusion of that conflict, rather than interjecting the courts into the fray where the threat of an injunction dangles over the head of teachers, but only if, in the opinion of the court, the school board has negotiated in good faith.

Our legislature, when it enacted the Professional Negotiations Act, I.C. § 33–1271 *et seq.,* which provided for negotiations between teachers' organizations and their employers, the school districts, was presumably well aware of the present state of labor relations in this country, which generally favors an economic, rather than judicial determination of wage disputes. In adopting that act the legislature might have prohibited strikes by teachers as it did in the legislation providing for labor negotiations by firefighters. I.C. § 44–1811. Having made no provision prohibiting strikes by teachers in their negotiations with school boards, it seems to me that the legislature has itself opted for an economic rather than a judicial determination of wage disputes between teachers and school boards. Therefore I cannot concur with the majority of this Court when they state, albeit by dictum, that teachers' strikes are prohibited and illegal and that courts should employ their injunctive powers to prohibit strikes by school teachers. In concluding otherwise it is not necessary to assert that the right of teachers to strike is a constitutionally protected right. It is merely enough to observe that the legislature has not prohibited strikes by teachers, and the common law strike/conspiracy rule is totally inappropriate to present day circumstances, *Good v. Good, supra.* Therefore, the right of teachers to strike is neither prohibited nor illegal.

For this reason, as well as the procedural reason expressed in Part IV of the majority opinion, I would join in the decision of the majority reversing the orders of the trial court which granted the injunctions. In light of the foregoing, it is not necessary to reach the constitutional issue in Part I, or the anti-injunction statute issue addressed in Part III of the Court's opinion.

---

1. The Professional Negotiations Act provides that "the board of trustees of each school district . . . shall . . . enter into a negotiation agreement with professional employees and negotiate with such employees in good faith on those matters specified in any such negotiation agreement . . . ." I.C. § 33–1271. *See also* I.C. § 33–1272(3). However, that act does not require the school district to negotiate in good faith with respect to the negotiation agreement which specifies the matters subject to negotiation. Consequently, the act does not prohibit an arbitrary or bad faith refusal by the school district to include important matters in the negotiation agreement. By exercising this unqualified power to limit the subject matter of the negotiations the school district can avoid the statutory obligation to negotiate in good faith or negotiate at all with respect to the excluded matters.