120　　　　　　　　　　　　　　　　　　400 Mass. 120

Labor Relations Commission v. Chelsea Teachers' Union, Local 1340; School Committee of Chelsea.

LABOR RELATIONS COMMISSION & another[1] *vs.* CHELSEA
TEACHERS' UNION, LOCAL 1340 & others;[2] SCHOOL
COMMITTEE OF CHELSEA & another,[3]
third-party defendants.

Suffolk. February 4, 1987. — May 28, 1987.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Labor,* Strike by public employees, Collective bargaining. *School and
School Committee,* Collective bargaining.

On appeal from a judgment assessing against a teachers' union and its
members a fine imposed following a finding of civil contempt on a
complaint filed by the Labor Relations Commission, this court, expres-
sing doubts whether the union could properly raise the question of the
unconstitutionality of the no-strike provision of G. L. c. 150E, § 9A,
for the first time following the adjudication of its contempt of court, in
any event, declined to reach the issue of the unconstitutionality of the
statute's prohibition against strikes by public employees, where the union
had not exhausted the statutory procedures which are available for the
possible resolution of public sector labor disputes. [122-124]

CIVIL ACTION commenced in the Superior Court Department
on May 13, 1985.
The case was heard by *Thomas R. Morse, Jr.,* J.
The Supreme Judicial Court granted a request for direct
appellate review.
*Deborah L. McCutcheon (Paul R. Collier, III,* with her) for
Chelsea Teachers' Union, Local 1340 & others.
*John B. Cochran* for Labor Relations Commission.

---

[1] The school committee of Chelsea (school committee) was allowed to
intervene.

[2] Edwin Weinstein, Bradley Toney, Judith Benea, and Jennifer Stygles,
individually and as officers of the Chelsea Teachers' Union.

[3] The mayor of Chelsea.

*Francis X. Bellotti,* Attorney General, & *William L. Pardee,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

WILKINS, J. The defendants appeal from a judgment assessing against the Chelsea Teachers' Union (union) and its members a fine of $5,000 imposed following a finding of civil contempt on a complaint filed by the Labor Relations Commission (commission). We affirm the judgment.

The contempt determination arose out of a strike by Chelsea school teachers which began on Friday, May 10, 1985. The school committee immediately filed a petition with the commission pursuant to G. L. c. 150E, § 9A (1984 ed.).[4] The commission conducted an investigation on May 11. The school committee and the union agreed that the collective bargaining agreement between them had expired on June 30, 1984, that they had been involved in collective bargaining for a successor agreement, and that for the previous six weeks they had been engaged in mediation. The commission found that the Chelsea school teachers had been engaged in a strike on May 10, ordered the union and the employees it represented to stop the strike, directed the union to inform its members of their obligations and of the commission's order, and ordered the union and the school committee to meet for further mediation sessions.

The strike continued on Monday, May 13, and the commission that day filed a complaint seeking a temporary restraining order directing the union and the Chelsea school teachers to comply with the commission's order. A judge of the Superior Court granted the temporary restraining order. The strike

[4] General Laws c. 150E, § 9A, reads as follows: "(*a*) No public employee or employee organization shall engage in a strike, and no public employee or employee organization shall induce, encourage or condone any strike, work stoppage, slowdown or withholding of services by such public employees.

"(*b*) Whenever a strike occurs or is about to occur, the employer shall petition the commission to make an investigation. If, after investigation, the commission determines that any provision of paragraph (*a*) of this section has been or is about to be violated, it shall immediately set requirements that must be complied with, including, but not limited to, instituting appropriate proceedings in the superior court for the county wherein such violation has occurred or is about to occur for enforcement of such requirements."

nevertheless continued. On May 15, the commission filed a complaint for civil contempt, alleging that the union, its officers, and the employees it represented had failed to return to work as directed. The judge held a hearing on May 16 and found the defendants in civil contempt. He imposed a fine of $40,000, subject to possible remission on showing of a good faith effort to continue the bargaining process. He stayed collection of the fine until further order. The union and the school committee agreed on a collective bargaining agreement on May 20, and the teachers returned to work that day.

On May 23, the union moved to vacate the judgment of contempt and to dismiss the commission's complaints, raising for the first time the claim that the no-strike provision of G. L. c. 150E, § 9A, on which the temporary restraining order had been based, was "unconstitutionally overbroad." [5] The commission responded that "G. L. c. 150E provides public employees with viable alternatives to strikes in the form of negotiation, mediation and fact-finding" and asserted that the union was making only a facial attack on § 9A. It is apparent that the judge gave no attention in any memorandum or order to the unions's claim that § 9A was unconstitutional.

In July, the judge remitted all but $5,000 of the fine assessed on May 16. We allowed the union's request for direct appellate review of the judgment imposing the fine.

The union contends that every employee, public as well as private, has a fundamental freedom under the Constitution of the Commonwealth to give or to withhold labor, individually or collectively, and that a statute, such as G. L. c. 150E, § 9A, which forbids all strikes by public employees is unconstitutional. We have substantial doubts whether the union properly may raise the question of the unconstitutionality of § 9A for the first time following the adjudication of its contempt of court. To the extent that the constitutionality of the application

---

[5] Advised of the claim, the Attorney General sought leave to file a memorandum of law. No action was taken on this request nor on the Attorney General's accompanying request for leave to intervene. Perhaps the motion was never presented to the judge. The Attorney General has filed a brief here as amicus curiae.

of § 9A to the union involves questions of fact, the issue should have been raised at a time when the commission and the school committee could present evidence that, as applied, § 9A was not unconstitutional. To the extent that the union asserts the facial invalidity of § 9A, the point is also raised belatedly. In any event, the union has not taken advantage of statutory procedures which at least in the circumstances of this case, it was obliged to follow before it properly could challenge the constitutionality of § 9A's prohibition against strikes by public employees.

The union was not entitled to challenge the prohibition against strikes by public employees until it had exhausted those statutory procedures that were available for the possible resolution of public sector labor disputes. Section 9 of G. L. c. 150E provides various steps which may be taken to resolve a public sector collective bargaining dispute. After a reasonable period of negotiation, either party may petition the board of conciliation and arbitration established under G. L. c. 23C (1984 ed.) for a determination that an impasse exists. The board then investigates and reports within ten days of the receipt of the petition whether an impasse exists and, if one does, that board within five days appoints a mediator, or the parties agree on one. After mediation, lasting no more than twenty days from the mediator's appointment, the mediator must issue to the board a report indicating the results of the efforts. If the impasse continues, either party may petition the board to initiate fact-finding by appointing a fact finder who, within thirty days of appointment, must make findings and recommendations for the resolution of the impasse. If the impasse is not resolved within ten days after the fact finder makes his findings and recommendations, the board must make them public. If the impasse continues, § 9 in effect throws up its hands and returns the issues in dispute to the parties for further bargaining.

Although it had time to do so, the union did not follow these procedures. Any need for a strike might have been averted. For example, if, as the union asserts, teachers in Chelsea were the lowest paid in the Commonwealth, receiving less than certain school custodians with equivalent length of service, and

if the school committee and the city were offering no pay increase at all in the 1984-1985 school year, a neutral fact finder would have so found and the information would have been made public. Moral suasion, supported by mediation and fact-finding, might have produced a settlement or, perhaps, an agreement to arbitrate the dispute. If, when collective bargaining does not succeed in producing an agreement, public employees have a constitutional right to strike, in spite of the prohibition of § 9A (a), the right can be exercised only after the employees have followed the procedures for resolution of the impasse set forth in § 9 or on a showing that in the circumstances the imposition of those procedures would be unconstitutional. The union did not pursue these statutory procedures (and does not challenge their application here as unconstitutional) and thus we need not reach the issue of the unconstitutionality of the prohibition of § 9A against strikes by public employees.[6]

This court has not dealt with the constitutional issue. We have, however, said that private employees in this Commonwealth have a constitutional right to strike.[7] There is little

---

[6] The union argues that the complaint for contempt failed to meet the requirements of Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982). The judge permitted the commission to correct the omissions by amendment. The plaintiffs were not prejudiced in any respect.

The union also argues that at the hearing on the contempt petition the judge improperly excluded testimony offered through members of the school committee and the mayor to show the unfairness of the school committee and the mayor and thus, it is said, to show why the teachers struck, their lack of intent to be in contempt of the court, and why drastic sanctions would not be fair. There was no error. The first two of these points were not material on the question of contempt. As for the third, after the judge had made the finding of contempt, he reduced the fine by $35,000 to $5,000, noting the teachers' very low pay scale in Chelsea and the fact that other Chelsea employees had received wage increases.

[7] In *Pickett* v. *Walsh*, 192 Mass. 572, 580-581 (1906), this court said: "The right of laborers to organize unions and to utilize such organizations by instituting a strike is an exercise of the common law right of every citizen to pursue his calling . . . . This common law right was raised to the dignity of a constitutional right by being incorporated in the Constitution of the Commonwealth. . . . In article 1 of the Declaration of Rights it is declared that 'All men are born free and equal, and have certain natural,

authority in support of the constitutional right of a public employee to strike, either under the Constitution of the United States or under State Constitutions.[8]

*Judgment affirmed.*

---

essential, and unalienable rights; among which may be reckoned the right of . . . seeking and obtaining their safety and happiness.' It is in the exercise of this right that laborers can legally combine together in what are called labor unions."

[8] The statutory ban on strikes by Federal government employees has been upheld as constitutional. *United Fed'n of Postal Clerks* v. *Blount,* 325 F. Supp. 879, 884 (D.D.C.), aff'd, 404 U.S. 802 (1971). Claims that prohibitions against strikes by public employees violate equal protection of the laws principles or due process requirements have been rejected almost universally. See, e.g., *School Dist. No. 351 Oneida County* v. *Oneida Educ. Ass'n,* 98 Idaho 486, 489 (1977); *City of N.Y.* v. *DeLury,* 23 N.Y.2d 175, 185 (1968); *School Comm. of Westerly* v. *Westerly Teachers Ass'n,* 111 R.I. 96, 99-101 (1973); Annot., 37 A.L.R.3d 1147 (1971). Cf. *Anderson Fed'n of Teachers Local 519* v. *School City of Anderson,* 252 Ind. 558, 561-562 (1970). Contra *United Fed'n of Postal Clerks* v. *Blount, supra* at 885-886 (Wright, J., concurring); *County Sanitation Dist. No. 2 of Los Angeles County* v. *Los Angeles County Employees' Ass'n, Local 660,* 38 Cal.3d 564, 590-591 (1985) (plurality opinion); *id.* at 605 (Bird, C.J., concurring); *Anderson Fed'n of Teachers Local 519* v. *School City of Anderson, supra* at 564 (DeBruler, C.J., dissenting) (relying on equal protection of the law); *School Comm. of Westerly* v. *Westerly Teachers Ass'n, supra* at 109 (Roberts, C.J., dissenting) (relying on First Amendment right of association).

By statute a number of States grant "nonessential" public employees the right to strike in certain circumstances, usually after any collective bargaining agreement has expired and after the exhaustion of impasse resolution procedures. Developments in the Law — Public Employment, 97 Harv. L. Rev. 1611, 1703-1704 (1984).

Some States grant the judiciary some discretion in deciding whether to enjoin an illegal strike. See, e.g., *School Dist. No. 351 Oneida County* v. *Oneida Educ. Ass'n, supra* at 490; *Timberlane Regional School Dist.* v. *Timberlane Regional Educ. Ass'n,* 114 N.H. 245, 251 (1974); *School Comm. of Westerly* v. *Westerly Teachers Ass'n, supra* at 104-105. No contention is made here that the trial judge had any statutory authority to deny an injunction against the strike in the face of § 9A's apparent direction to enjoin the strike on petition of the commission. Nor is any claim made that such a restriction on judicial discretion is an unconstitutional intrusion on the separate power of the judiciary under art. 30 of the Massachusetts Declaration of Rights.