ERLING N. HANSEN & others *vs.* COMMONWEALTH.

Suffolk. April 17, 1962. — April 20, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Labor. Public Employment. Contempt. Public Agency. Metropolitan Transit Authority. Jurisdiction,* Labor. *Equity Pleading and Practice,* Labor case, Injunction, Parties, Class suit. *Superior Court,* Jurisdiction. *Error, Writ of. Equity Jurisdiction,* Labor dispute. *Unincorporated Association. Evidence,* Competency, On writ of error. *Words,* "Labor dispute," "Persons."*

A judgment of criminal contempt, although arising out of a suit in equity, may be reviewed by writ of error.   [216]

The employees of the Metropolitan Transit Authority, established by St. 1947, c. 544, as a "body politic and corporate and a political subdivision of" the Commonwealth, are public employees.   [218–219]

Neither the "Anti-Injunction Act," G. L. c. 214, § 9A, nor the requirement of a three-judge court under G. L. c. 212, § 30, applied in a suit in equity by the Metropolitan Transit Authority, a public employer, to enjoin a threatened strike by its public employees, even though the nature of the case was such that had the parties been private parties those statutes would have been applicable.   [218–220]

The word "persons" in statutes is not ordinarily to be construed as including the State or its political subdivisions.   [219]

A bill in equity by an employer naming as defendants certain officers of an unincorporated labor union alleged to be "sued . . . individually and in their representative capacity" and to "insure adequate representation of all members of" the union, several thousand in number and commonly interested in the suit, was sufficient to bring all the members before the court on the basis of a class suit.   [220–221]

In a class suit in equity by an employer against the members of an unincorporated labor union commenced by a bill naming as defendants certain officers of the union as adequately representing all its several thousand members, a temporary restraining order issued "against the persons named in the . . . [bill] either as officers or in their individual capacities and against all members of" the union was sufficient to reach members of the union not named in the bill, even though the words "and representative" were omitted before the word "capacities."   [221–222]

Facts established in a criminal contempt proceeding after due hearing, that the respondent as party to a suit in equity had notice of a restraining order issued therein against him and that he had wilfully disobeyed the order, were not open to redetermination on a writ of error sued out by him to reverse a judgment of contempt.   [222]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on April 12, 1962.

The case was reserved and reported by *Spalding, J.*, without decision.

*Arthur J. Flamm & Stanley H. Rudman*, (*Lewis G. Pollock* with them,) for the petitioners.

*John R. Kewer*, amicus curiae, argued by leave of court, (*Lawrence E. Cooke*, Assistant Attorney General, for the Commonwealth, and *William F. Joy, William J. Fitzsimons, Philip A. Brine, Jr., & John M. Hogan*, amici curiae, with him).

*Lawrence M. Kearns*, joined in a brief as amicus curiae.

SPALDING, J.   This is a petition for a writ of error to reverse eight judgments for contempt in the Superior Court. The case was reserved and reported by a single justice, without decision, upon the petition, the return of the Superior Court, the Commonwealth's plea in nullo est erratum, and certain documentary and oral evidence,[1] for the determination of the full court.

The effect of the plea in nullo est erratum is to admit facts well pleaded.   *Jones* v. *Commonwealth*, 331 Mass. 169, 170.

The facts are these.   On March 29, 1962, the Metropolitan Transit Authority (Authority) filed a bill of complaint in the Suffolk Superior Court against Michael J. Gormley and others, individually and as officers of Division 589 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America (Division 589), to obtain injunctive relief to insure the continuance of public transportation in the fourteen cities and towns served by the Authority.   A short order of notice issued returnable on March 30, 1962.   At an ex parte hearing held on March 30 a temporary restraining order was issued against the officers of Division 589 in their individual capacities and against all the members of Division 589, enjoining them from "engaging in a strike, partial strike, or concerted refusal to perform services or assignments under the Petitioner's Spring Schedule for its operating employees on

---

[1] The oral evidence, which related to certain testimony given in the contempt proceedings, was admitted de bene.   Under the terms of the report the admissibility of this evidence, in whole or in part, was reserved for the determination of the full court.

and after such schedule becomes effective on March 31, 1962." The restraining order was to continue in force and effect until April 9, 1962, or until the further order of the court.

On March 31, 1962, the Authority filed a petition for contempt against nine members of Division 589 for wilful violation of the temporary restraining order by refusal to perform services or assignments pursuant to the Authority's spring schedule for 1962. The petition for contempt was heard on April 9 and 10 before the judge who had issued the temporary restraining order. A motion by the respondents (petitioners here) to quash the contempt proceedings was denied. On April 11 eight of the respondents (petitioners here) were adjudged to be in contempt and each was sentenced to a term in jail.

Thereafter, on April 12, 1962, this petition for a writ of error was brought in the county court seeking to have the judgments for contempt set aside. After a hearing, the single justice reported the case to this court as indicated above. The Commonwealth was substituted for the Authority as the party respondent.

1. The Commonwealth argues that since these judgments for contempt arose out of an equity proceeding they cannot be reviewed on a writ of error. In support of this contention it cites *Scola* v. *Scola,* 318 Mass. 9, 12. This case holds that a writ of error is not the appropriate remedy to review a proceeding for civil contempt; it is not authority for the proposition that a criminal contempt which stems from an equity proceeding cannot be reviewed by writ of error. The proceedings both in the court below and in this court have been argued on the footing that the contempts were criminal. It is settled that criminal contempts can be reviewed by writ of error. This is so well established that further discussion is unnecessary. *Hurley* v. *Commonwealth,* 188 Mass. 443. *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 374–375. *Dolan* v. *Commonwealth,* 304 Mass. 325, 332–333. *New England Novelty Co. Inc.* v. *Sandberg,* 315 Mass. 739, 747–748. *Scola* v. *Scola,* 318 Mass. 9, 12.

2. General Laws c. 214, § 9A (inserted by St. 1935, c. 407,

§ 4) (popularly referred to as the Anti-Injunction Act), provides that: "(1) No court shall have jurisdiction to issue a preliminary or permanent injunction in any case involving or growing out of a labor dispute, as defined in section twenty C of chapter one hundred and forty-nine, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof; (b) That substantial and irreparable injury to the complainant's property will follow; (c) That as to each item of relief granted greater injury will be inflicted upon the complainant by the denial of relief than will be inflicted upon the defendants by the granting of relief; (d) That the complainant has no adequate remedy at law; and (e) That the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection." Any "action or proceeding" arising under the Anti-Injunction Act is to be heard by three associate justices of the Superior Court designated by the chief justice of that court. G. L. c. 212, § 30 (inserted by St. 1959, c. 600). It is urged by the petitioners that the failure to convene a three-judge court and the neglect to comply with the procedural safeguards provided by G. L. c. 214, § 9A, were errors of law, and that the single judge had no jurisdiction to issue a temporary restraining order under G. L. c. 214, § 9. Since, the petitioners contend, the order was issued by a court without jurisdiction, it is a void order for violation of which no one can be held in contempt.

We are of opinion that the single judge had jurisdiction

to issue the order. Whether the Anti-Injunction Act applies (and consequently the three-judge court statute) depends upon whether the controversy involves or grows out of a "labor dispute" as that term is defined in G. L. c. 149, § 20C (inserted by St. 1935, c. 407, § 1, as amended by St. 1950, c. 452, §§ 1, 2). The relevant portion of § 20C provides: "(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined)." It seems to be conceded by the parties, and we assume, that the present case would involve a "labor dispute" if the controversy were between a private employer and the petitioners' union. But the Commonwealth argues that the Anti-Injunction Act was not intended to apply where employees of the Authority are threatening to strike. We agree.

That the employees of the Authority are public employees we have no doubt. The Authority was established by St. 1947, c. 544, and it is expressly stated in § 1 that it is "hereby made a body politic and corporate and a political subdivision of the commonwealth." It is true that in § 19 it is expressly provided that "with respect to hours of employment, rates of wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances" the employees of the Authority shall be governed by the laws relating to "street railway companies" rather than the laws governing "public employees." But this, we

think, only serves to strengthen our conclusion that the Legislature intended the Authority to be considered a public body. The language of a New York court describing the New York City Transit Authority is pertinent here: "Whatever may be the case elsewhere, and under other conditions, whatever may have been the case in other times, here and now, and for this city, the operation of the rapid transit facilities is a basic governmental service indispensable to the conduct of all other governmental as well as private activities necessary for the public welfare." *New York City Transit Authy.* v. *Loos,* 2 Misc. 2d (N. Y.) 733, 738, affirmed in 3 App. Div. 2d (N. Y.) 740 (without opinion).

The statute defining a "labor dispute" speaks of "persons who are engaged in the same industry, trade, craft or occupation." Such language is not apt to describe public employers and public employees. See *United States* v. *United Mine Wkrs. of America,* 330 U. S. 258, 275–276; *Jewish Hosp. of Brooklyn* v. *John Doe,* 252 App. Div. (N. Y.) 581, 583–584. Further, it is a widely accepted rule of statutory construction that general words in a statute such as "persons" will not ordinarily be construed to include the State or political subdivisions thereof. *United States* v. *United Mine Wkrs. of America,* 330 U. S. 258, 275. *Manchester* v. *Manchester Teachers Guild,* 100 N. H. 507, 511. *Jewish Hosp. of Brooklyn* v. *John Doe,* 252 App. Div. (N. Y.) 581, 584. *Westchester County* v. *Westchester County Fedn. of Labor,* 115 N. Y. S. 2d 144, 146. *Port of Seattle* v. *International Longshoremen's & Warehousemen's Union,* 52 Wash. 2d 317, 321. See *Donohue* v. *Newburyport,* 211 Mass. 561, 566–569; *O'Donnell* v. *North Attleborough,* 212 Mass. 243; *Howard* v. *Chicopee,* 299 Mass. 115, 121; *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243, 250; *Mrugala* v. *Boston,* 330 Mass. 707; G. L. c. 4, § 7, Twenty-third. Finally, we note that § 26 of St. 1947, c. 544 (as amended by St. 1950, c. 117, § 2), specifically refers to those sections of the General Laws which are to apply to "the authority, its property and employees." The omission of any refer-

ence to the statutes under consideration is not without
significance. *Malden* v. *Metropolitan Transit Authy.* 328
Mass. 491, 496. Both as a matter of statutory construction
and strong public policy, we interpret the Anti-Injunction
Act as not applying to threatened strikes by public em-
ployees. The opposite result, requiring the convening of a
three-judge court and compliance with the procedural re-
strictions of the Anti-Injunction Act before a restraining
order could issue, would seriously jeopardize the protection
of the public welfare. See *United States* v. *United Mine
Wkrs. of America,* 330 U. S. 258; *Petrucci* v. *Hogan,* 5 Misc.
2d (N. Y.) 480; *Westchester County* v. *Westchester County
Fedn. of Labor,* 115 N. Y. S. 2d 144; *New York City Transit
Authy.* v. *Loos,* 2 Misc. 2d (N. Y.) 733, 742, affirmed in 3
App. Div. 2d (N. Y.) 740 (without opinion). It would take
clear and unequivocal language to convince us that the
Legislature intended such a result, especially in the light
of the mandatory arbitration provision of St. 1947, c. 544.
§ 19, which in effect prohibits strikes.

In view of this conclusion we need not decide whether the
petitioners could be guilty of contempt if the matter should
have been heard by a three-judge court. See *United States*
v. *United Mine Wkrs. of America,* 330 U. S. 258, 289–295.

3. The petitioners argue that they were not parties to
the proceeding at the time the temporary restraining order
was issued and hence could not be affected by it. We are
of opinion that this contention lacks merit. While an unin-
corporated labor union is not a separate entity and cannot
be made a party defendant, nevertheless, "[i]n equity, if
the members are numerous, a number of members may be
made parties defendant as representatives of the class."
*Pickett* v. *Walsh,* 192 Mass. 572, 590. *Donahue* v. *Kenney,*
327 Mass. 409. The bill of complaint on which the restrain-
ing order was issued named as parties defendant eleven of-
ficers and members, including the president, of Division 589.
Paragraph 5 of the bill reads: "The above-named officers
and members of the aforesaid Division 589 are sued herein
individually and in their representative capacity. All of
the members of said Division 589 have not been made Re-

spondents herein since, by reason of the fact that they are about Four Thousand and Seventy-seven . . . in number, it would be impracticable to bring them all before the Court, but the suit is of common and general interest to each and all members of said Division 589, and any one or more of the individual Respondents named in this complaint will insure adequate representation of all members of said Division 589." We are of opinion that these allegations were sufficient to bring the members of the union before the court on the theory of a class suit of the sort discussed in *Pickett* v. *Walsh* and *Donahue* v. *Kenney, supra.*

There can be no doubt that upon the filing of the bill (the requirements of G. L. c. 214, § 9, being satisfied, as we think they were) the court had authority under that section to issue a temporary restraining order.

4.   In G. L. c. 214, § 9, governing temporary restraining orders, it is provided that "Every temporary restraining order shall be filed or noted forthwith in the clerk's office." Immediately following the granting of the temporary restraining order by the court on March 30 an order was placed on the files of the court by the clerk which stated that a temporary restraining order was issued "against the persons named in the Petition either as officers or in their individual capacities *and against all members of Division 589 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America*" (emphasis supplied). On April 4 the judge made the following order: "It appearing to the Court that a clerical error is contained in the Clerk's record pertaining to the . . . restraining order entered March 30, 1962, in that there was a failure by the Clerk to include the words 'and representative' after the word 'individual' [and before 'capacities'] . . . it is now therefore ordered that the Clerk correct his record by inserting the words 'and representative' after the word 'individual'. . . ."[1]   This order was entered nunc pro tunc as of March 30.

---

[1] After the correction the order read, "against the persons named in the Petition either as officers or in their individual and representative capacities and against all the members of Division 589 . . . ."

It is urged on behalf of the petitioners that the failure to insert the words "and representative" in the restraining order until after the alleged contumacious acts had occurred invalidated the contempt proceeding. We are of opinion that it did not. The original restraining order, without the correction, was sufficient to reach the petitioners, for it stated that it was issued against "all members of Division 589." It is, therefore, unnecessary to consider the effect of the nunc pro tunc order.

5. At the hearing before the single justice of this court evidence was admitted de bene as to what notice there was of the restraining order which might have come to the attention of the petitioners before they were to have commenced work on March 31. The petitioners argue that as matter of law this evidence was insufficient to support a finding of actual knowledge on their part of the terms of the order. Further evidence was received de bene which was designed to show that the petitioners Sugrue, Farrell, and McGonagle were not guilty of wilfully disobeying the restraining order. It is contended that there was no evidence that Farrell or McGonagle refused to take any specified trip, or that Sugrue counseled other persons to engage in a strike. But these are questions which we do not reach where, as here, the review is by writ of error. Questions of fact that have been "once tried and established by a tribunal having jurisdiction cannot be retried by writ of error. . . . Evidence heard at the trial on the merits is no part of the record and hence cannot be considered on a writ of error." *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 376–377. *Guerin* v. *Commonwealth,* 337 Mass. 264, 268, and cases cited. The present case does not fall within any of the exceptions mentioned in the *Guerin* case (*supra,* at pages 268–269) or within that discussed in *Sandrelli* v. *Commonwealth,* 342 Mass. 129, at pages 141–143.

*Judgments affirmed.*