## Massachusetts Correction Officers Federated Union *vs.* County of Bristol & another.[1]

No. 03-P-1493.

Bristol. November 16, 2004. - September 8, 2005.

Present: Greenberg, Cowin, & Doerfer, JJ.

*Injunction. Anti-Injunction Act. Statute,* Construction. *Administrative Law,* Exhaustion of remedies. *Jurisdiction,* Labor case. *Labor Relations Commission. Public Employment,* Collective bargaining, Vacation pay. *Labor,* Collective bargaining, Unfair labor practice. *Words,* "Person," "Labor dispute."

This court concluded that the Anti-Injunction Act, G. L. c. 214, § 6, which limits the jurisdiction of the courts in granting injunctive relief in cases involving or growing out of a labor dispute, did not apply to a complaint brought in Superior Court by a union against a county and its sheriff, where neither the county nor the sheriff was a "person" participating or interested in a labor dispute as defined by that statute. [465-467]

This court concluded that the administrative law framework constructed by the Legislature under G. L. c. 150E, which invests the Labor Relations Commission (commission) with jurisdiction to deal with complaints of unfair labor practices and to issue orders for expeditious hearings in connection with such complaints, requires the courts to refrain from entering such orders where such a complaint is pending before the commission. [467-470]

Civil action commenced in the Superior Court Department on June 30, 2003.

A motion for injunctive relief was heard by *Richard T. Moses*, J.

*Matthew E. Dwyer* (*Kathleen A. Pennini* with him) for the plaintiff.

*Robert M. Novack* for the defendants.

Doerfer, J. Collective bargaining between the Massachusetts Correction Officers Federated Union (union) and the county of

[1]Sheriff of Bristol County.

462       64 Mass. App. Ct. 461 (2005)

Massachusetts Correction Officers Federated Union *v.* County of Bristol.

Bristol and its sheriff (employer) had proceeded to impasse after the expiration of a prior collective bargaining agreement. One issue which had been the subject of bargaining was the establishment of a vacation schedule. No agreement having been reached, the employer established the vacation schedule that it preferred. The union regarded this to be an unfair labor practice and brought a complaint before the Labor Relations Commission (commission). The union also brought a complaint in Superior Court seeking a preliminary injunction to keep the old vacation scheduling procedures in place. We affirm the order denying the application for a preliminary injunction, though not for the reasons given by the motion judge. We conclude that the administrative law framework constructed by the Legislature under G. L. c. 150E, which invests the commission with jurisdiction to deal with complaints of unfair labor practices and to issue orders for expeditious hearings in connection with such complaints, 456 Code Mass. Regs. § 15.10 (1993), requires the courts to refrain from entering such orders where, as here, such a complaint is pending before the commission.

*Facts and prior proceedings.* In 1997, the union, on behalf of its more than three hundred members, and the employer entered into a three-year collective bargaining agreement (CBA), which, by its terms, expired in June of 2000. Upon the expiration of that labor agreement, the union and employer engaged in bargaining, mediation, and fact-finding, all in an effort to reach a new agreement.[2] That effort was inconclusive.

Under the CBA (art. X, § 20), "an employee's vacation week shall commence on the first day after the employee's regularly scheduled days off." The CBA (art. X, § 8) did, however, reserve power to the appointing authority (the sheriff), who "shall establish the over-all vacation schedule and retain the right to make revisions therein and shall grant vacation leave in the vacation year in which it becomes available, unless in [the sheriff's] opinion it is impossible or impracticable to do so because of work schedules or emergencies."

The sheriff asserted that, over the course of the CBA, § 20

---

[2] The CBA did not contain any provision to extend the term of the agreement until such time as a successor contract was entered.

had led to a situation where the sheriff's office had been "forced" to spend a substantial amount of its budget for overtime pay, necessitated by having junior correction officers work extra hours to cover those senior officers who were able to "wrap around" vacation weeks by taking them beginning immediately after their regularly scheduled days off, so as to be out of the work cycle for periods of time longer than had been the custom before the CBA.

In bargaining for a new agreement, the sheriff proposed that the parties revert back to a vacation leave protocol (which had been in place before the CBA) calling for a Sunday through Saturday schedule. That particular issue, among others, remained unresolved, despite the parties' efforts to reach an accord through the mediation and fact-finding process.[3]

In March, 2003, the sheriff informed the union that overtime expenditures were straining the fisc of the sheriff's office and the health of junior officers who were being required to work extra hours as a result of the vacation policy under § 20. The sheriff solicited the union's ideas for possible solutions. This invitation was not productive of further negotiations, and on April 16, 2003, the sheriff announced the new policy respecting the scheduling of vacation leave that is the subject matter of this dispute.

The sheriff, in his capacity as appointing authority, contends that he acted in good faith and within his permitted managerial power to change or alter the vacation leave schedule based on the needs of his office.[4] The union, on the other hand, maintains the effect of the sheriff's policy is to implement a unilateral

[3]See G. L. c. 150E, §§ 6, 9. See also *School Comm. of Boston* v. *Boston Teachers Union, Local 66, Am. Fedn. of Teachers (AFL-CIO)*, 372 Mass. 605, 608-609 (1977) (describing the cited statutory procedure); *Labor Relations Commn.* v. *Chelsea Teachers' Union, Local 1340*, 400 Mass. 120, 123 (1987).

[4]Because we decide the appeal on another basis, we do not delve into the question of the inherent managerial power of a public employer. See, e.g., *Massachusetts Org. of State Engrs. & Scientists* v. *Labor Relations Commn.*, 389 Mass. 920, 926-928 (1983); *Springfield Hous. Authy.* v. *Labor Relations Commn.*, 16 Mass. App. Ct. 653, 654-658 (1983). Cf. *Sheriff of Middlesex County* v. *International Bhd. of Correctional Officers, Local R1-193*, 62 Mass. App. Ct. 830, 831 (2005) (discussion respecting G. L. c. 37, § 3, which confers upon the county sheriff, a public employer, a "particular managerial power").

change to a mandatory subject of bargaining without reaching an impasse and thus constitutes an unfair labor practice.

Subsequently, on May 7, 2003, the union filed a complaint with the commission, alleging the sheriff had engaged in a prohibited practice. The union did not request an expedited hearing. See 456 Code Mass. Regs. § 15.10 (1993).

While the unfair labor practice complaint was pending before the commission, the union commenced this action in the Superior Court on June 30, 2003, and applied for the issuance of a preliminary injunction. At the hearing on that application the parties addressed the issue, among others, whether the Superior Court could issue such equitable relief given the pendency of the unfair labor practice charge at the administrative level. A Superior Court judge, after hearing and submissions by the parties, relied instead on the sheriff's additional argument that G. L. c. 214, § 6 (the Anti-Injunction Act), applied to the case at hand, so as to bar the court from issuing injunctive relief unless the applicable procedures were followed, including the requirement of a three-judge panel.[5] In addition, the judge also agreed with the sheriff that the union had not, in any event, met its burden under the standard for the issuance of a preliminary injunction. See *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 616-617 (1980).

The union appealed pursuant to G. L. c. 231, § 118, second par., from the judge's ruling denying its application for a preliminary injunction. Contrary to the motion judge's ruling, we conclude that the Anti-Injunction Act, G. L. c. 214, § 6, was inapplicable and thus did not delineate the court's jurisdiction to hear the matter. We hold there was no error, however, in denying the injunction, because we believe the principle of exhaustion of remedies is controlling.[6] In light of the union's pending complaint before the commission, the trial court (and this court) should not act on a request for a preliminary injunc-

---

[5]See G. L. c. 212, § 30, requiring that Superior Court actions involving the Anti-Injunction Act be heard and determined by three associate justices designated by the chief justice of the court.

[6]The judge's decision, in denying the union's application for an injunction, implicitly responds to this principle, but we prefer to state the matter more explicitly.

tion at least until such time as an appeal for judicial review by either side from a final decision of the commission is ripe. The questions raised by the union's unfair labor practice charge before the commission encompass the same substantive issues arising from its application for a preliminary injunction. As such, the commission should decide the matter in the first instance.[7]

*Anti-Injunction Act.* General Laws c. 214, § 6, inserted by St. 1973, c. 1114, § 62, limits the court's jurisdiction in granting injunctive relief in cases "involving or growing out of a labor dispute." "Labor dispute," as that term appears in § 6, is separately defined in a related statute, G. L. c. 149, § 20C, which provides in relevant part,

> "(a) A case shall be held to involve or to grow out of a labor dispute when the case involves *persons* who are engaged in the same industry, trade, craft or occupation; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; . . . or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of *'persons* participating or interested' therein (as hereinafter defined).

> "(b) A *person* or association shall be held to be a *person* participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft or occupation.

> "(c) The term 'labor dispute' . . . includes any controversy arising out of any demand of any character whatsoever concerning terms or conditions of employment . . . regardless of whether the disputants stand in proximate relation of employer and employee." (Emphases added.)

[7]On the view we take of the case, it is unnecessary to discuss whether the union made the showing required to obtain a preliminary injunction.

G. L. c. 149, § 20C, as amended by St. 1950, c. 452, § 2.

We do not believe the conclusion that Bristol County and its sheriff were a "person" within the meaning of § 6 and § 20C is consistent with *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962), and related cases. Thus, we conclude that the Anti-Injunction Act (§ 6) does not apply and that the court's jurisdiction to enter the relief requested by the union did not depend on strict compliance with the specified procedures, including sworn testimony before, and findings under § 6(1) by, a three-judge panel of the Superior Court convened pursuant to G. L. c. 212, § 30 (see note 5, *supra*).[8]

As a general principle, the Supreme Judicial Court and this court have ruled that " 'person' ordinarily does not describe the State or its subdivisions." *Commonwealth* v. *Dowd*, 37 Mass. App. Ct. 164, 166 (1994). See *Hansen* v. *Commonwealth*, 344

---

[8]Prior to the issuance of an injunction in a case where the Anti-Injunction Act applies, a three-judge panel must find:

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to the plaintiff's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon the plaintiff by the denial of relief than will be inflicted upon the defendants by the granting of relief;

"(d) That the plaintiff has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect the plaintiff's property are unable or unwilling to furnish adequate protection."

G. L. c. 214, § 6(1). The Anti-Injunction Act also requires that no restraining order shall issue to any plaintiff "who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute." G. L. c. 214, § 6(4). The requirements of § 6(1)(*a*)-(*e*) are "stated conjunctively," and thus, "a failure to find any one of them is fatal to injunctive relief." *Seekonk Family Drive-In Theatre, Inc.* v. *Madino*, 340 Mass. 425, 429 (1960).

Mass. at 219; *Kilbane* v. *Secretary of Human Servs.*, 14 Mass. App. Ct. 286, 287 (1982).

In *Hansen*, the court addressed the meaning of the term "labor dispute" under the Anti-Injunction Act in a case where a public employer (the Metropolitan Transit Authority) sought to enjoin a threatened strike of its public employees. *Hansen* v. *Commonwealth*, 344 Mass. at 218. The court focused on the term "persons" in G. L. c. 149, § 20C, which refers to those "who are engaged in the same industry, trade, craft or occupation." *Id.* at 219. The court determined that "[s]uch language is not apt to describe public employers and public employees." *Ibid.* The court expressly stated, "it is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof." *Ibid.*, citing *United States* v. *United Mine Workers of America*, 330 U.S. 258, 275-276 (1947), and collecting cases. Drawing from principles of both statutory construction and "strong public policy," the court in *Hansen* ruled that the Anti-Injunction Act did not apply to threatened strikes by public employees. 344 Mass. at 220. The court reasoned that "[t]he opposite result, requiring the convening of a three-judge court and compliance with the procedural restrictions of the Anti-Injunction Act before a restraining order could issue, would seriously jeopardize the protection of the public welfare." *Ibid.*

*Exhaustion of administrative remedies.* The doctrine of exhaustion of administrative remedies[9] applies to controversies before the commission. "To permit judicial interference with the orderly administration by the commission of matters entrusted to it by the Legislature before it has commenced to exercise its authority in any particular case or before it has had

---

[9]Because of the pendency of administrative proceedings, this appeal involves the exhaustion doctrine and is technically not a case of "primary jurisdiction," as the employer asserts in its brief on appeal. See *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220-221 (1979), and authorities cited. The rationale for the two doctrines is very much the same: to promote proper relationships and sensible coordination of work between courts and administrative agencies that are charged with regulatory responsibilities. *Id.* at 221, citing 3 K.C. Davis, Administrative Law § 19.01, at 5 (1958).

an opportunity to determine the facts and make a final decision, would in effect transfer to the courts the determination of questions which the Legislature has left in the first instance to the commission, and would result in the substitution of the judgment of the court for that of the commission." *St. Luke's Hosp.* v. *Labor Relations Commn.*, 320 Mass. 467, 470 (1946) (certification controversy pending before the commission under G. L. c. 150A). See *Jordan Marsh Co.* v. *Labor Relations Commn.*, 312 Mass. 597 (1942). The doctrine has been applied to controversies before the commission involving public employers as well as private employers. See *City Manager of Medford* v. *Labor Relations Commn.*, 353 Mass. 519, 521-523 (1968). See also *Puorro* v. *Commonwealth*, 59 Mass. App. Ct. 61, 64 (2003) (civil service review).[10]

Thus, a petitioner seeking the issuance of injunctive relief must first exhaust available administrative remedies before a court may consider invoking its extraordinary equitable power. *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 448 (1973). "By permitting an agency to apply its expertise to the statutory scheme which it is charged to enforce, courts preserve the integrity of the administrative process while sparing the judiciary the burden of reviewing administrative proceedings in a piecemeal fashion." *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220 (1979).

There are no questions of law involved in this case that have not been committed to agency discretion. Contrast *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 329 Mass. 243, 247-248 (1952); *Uniformed Firefighters of Ludlow, Local 1840* v. *Selectmen of Ludlow*, 29 Mass. App. Ct. 901, 902-903 (1990). Rather, this dispute touches

---

[10]For background, see, e.g., Cowin, Administrative Law, 1965 Ann. Survey of Mass. Law 165 (Supreme Judicial Court "has, in the tradition of *St. Luke's Hospital* v. *Labor Relations Commission*, [320 Mass. 467 (1946),] adamantly refused to interfere with the administrative process prior to its conclusion" [footnote omitted]). Though there had been then (and carries on today) a concern that our State agencies "develop consistent and workable approaches to the problems which they must face," *id.* at 166, in the case of the commission there are well-established standards and procedures for the disputes that come before it.

on a subject — an alleged unfair labor practice of failing to bargain in good faith on a mandatory subject of bargaining — that necessarily calls for the commission's special expertise and experience and is within the grasp of the latter's authority as designated by our Legislature.[11] See *Local 950, Intl. Assn. of Firefighters* v. *Brookline*, 35 Mass. App. Ct. 943, 944 (1993).

Nor can it be reasonably said here that it would be "futile" for the union to exhaust its administrative remedies, or (as the union puts it here) that its rights may be prejudiced in the event the administrative process is lengthy. There are remedies available to the union before the commission, and as such, the union must avail itself of that process before it can seek judicial review.[12] "Where the Legislature has provided an administrative process for the resolution of disputes in the first instance, the courts must respect that choice." *Puorro* v. *Commonwealth*, 59 Mass. App. Ct. at 64.[13] If a violation is found, the commission, in the exercise of its discretion, has a range of remedies available to it, including an order to restore the status quo. See G. L. c. 150E, § 11. See *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 575-576 (1983); *Labor Relations Commn.* v. *Everett*, 7 Mass. App. Ct. 826, 829 (1979); *Wakefield* v. *Labor Relations Commn.*, 45 Mass. App. Ct. 630, 632 (1998).

Though the union reasonably argues the sheriff's "unilateral action" may erroneously deprive its members of certain privileges respecting vacation schedules, the commission is fully capable to remedy any proven wrong and grant whatever

[11]It bears repeating here the court's observation in *Athol Memorial Hosp.* v. *Commissioner of the Div. of Med. Assistance*, 437 Mass. 417, 426 (2002), that the exhaustion doctrine "is one of deference to the Legislature where it has expressed its intent that a particular question be determined in the first instance by an administrative agency."

[12]For example, among other options, the union could avail itself of the procedure expressly provided for in 456 Code Mass. Regs. § 15.10 (1993), allowing a party before the commission to obtain an expedited investigation or hearing respecting an unfair labor practice complaint. There is no indication in this record whether the union (or the commission, sua sponte) pursued this procedural avenue.

[13]By way of comparison, see *Sullivan* v. *Brookline*, 435 Mass. 353, 355 n.1 (2001) ("exhaustion cannot be required where no administrative remedy exists").

relief it deems appropriate. The commission "can bring consistency to decisions, and in many cases may have relevant expertise beyond that of the courts." *Puorro* v. *Commonwealth*, 59 Mass. App. Ct. at 67, quoting from *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees*, 399 Mass. 341, 349 (1987).

*Conclusion.* For the reasons stated here, we affirm the order denying the union's application for a preliminary injunction.

*So ordered.*