757 P.2d 651

Trin GEORGE, By and Through, her next friend and mother Bonnie GEORGE, Michael Fodge, by and through his next friend and father Kermit Fodge, and Lucas Mead, by and through his next friend and mother Pamela Mead, Plaintiffs-Respondents,

v.

Rich DONOVAN, individually and in his official capacity as Director of the Department of Health and Welfare, Jerry Harris, individually and in his capacity as Administrator of the Division of Community Rehabilitation, Cecil Andrus, in his official capacity as Governor, and the Idaho Department of Health And Welfare, Defendants-Appellants.

No. 16462.

Supreme Court of Idaho.

Oct. 1, 1987.

On Rehearing June 23, 1988.

Jim Jones, Atty. Gen., James Wickham, Michael R. De Angelo, Deputy Attys. Gen., Boise, for defendants-appellants.

J. Brent Marchbanks, Boise, for plaintiffs-respondents.

DONALDSON, Justice.

Idaho Department of Health and Welfare (the Department) and related defendants appeal from an order of the district court issuing a Writ of Mandamus and enjoining them from discontinuing disability benefits to respondents, three developmentally disabled children. The court below ruled that legislative enactments mandated the continued allocation of disability benefits to respondents even though all funds appropriated by the legislature for the program under which they had been receiving benefits, the Community Developmental Disabilities Program (the CDDP), had been allocated by the Department. Because the court below has compelled the Department to do an act which is in contravention of the Idaho Constitution, we reverse.

Trin George, Michael Fodge and Lucas Mead are children who suffer, respectively, from Rett's syndrome, cerebral palsy and Down's syndrome. They are all "developmentally disabled" within the meaning of the Idaho Developmental Disabilities Services and Facilities Act of 1978 (the Act). *See* I.C. § 39–4604(2) (1985). Respondents had been receiving benefits pursuant to the Act in the form of speech and developmental therapy services, when, in the fall of 1985, they were informed by the Department that the benefits would be discontinued due to lack of funding. In January of 1986, respondents filed an action in district court seeking a Writ of Mandamus and an injunction restraining the Department from discontinuing the benefits.

The Department submitted an affidavit of Gary Broker, the Chief of the Bureau of Financial Services for the Department, who was responsible for overseeing the budgets of the various departmental programs, including the CDDP. Mr. Broker in his affidavit testified that for the fiscal year 1986, which began July 1, 1985, the CDDP was appropriated $4,912,300 by the Idaho Legislature and was to receive $3,347,600 in federal funds as well. *See* 1985 Idaho Sess. Laws ch. 130, § 2, p. 325 and ch. 199, § 1, pp. 501–02. On September 10, 1985, Governor John V. Evans, in accordance with powers granted him by the Idaho Constitution [1] and the Idaho Legislature,[2] ordered reductions in the total appropriations to the Department and many other state departments. *See* 1986 Idaho Sess. Laws, Executive Order No. 85–20, pp. 925–26. This measure decreased the Department's total allotment by the amount of $1,786,-700. Mr. Broker testified that this holdback had the effect of a $163,324 reduction in funding to the CDDP. He further testified that federal funding was also 4.3% less than anticipated as a result of federal efforts to cut spending. In January 1986, the legislature amended the appropriation to Community Developmental Disability Services, reducing it to a level $221,100 less than the original appropriation. *See* 1986 Idaho Sess. Laws, ch. 1, § 39, p. 29.

---

1. The Idaho Constitution, in art. 7, provides:
    "**§ 11. Expenditure not to exceed appropriation.**—No appropriation shall be made, nor any expenditure authorized by the legislature, whereby the expenditure of the state during any fiscal year shall exceed the total tax then provided for by law, and applicable to such appropriation or expenditure, unless the legislature making such appropriation shall provide for levying a sufficient tax, not exceeding the rates allowed in section nine of this article, to pay such appropriation or expenditure within such fiscal year. This provision shall not apply to appropriations or expenditures to suppress insurrection, defend the state, or assist in defending the United States in time of war.
    *See also,* Id. Const., art. 8, § 1.

2. The Idaho Code provides:

    "**67–3512A. Temporary reduction of allotments.**—Whenever the governor as chief budget officer of the state may determine that the expenditures authorized by the legislature for the current fiscal year shall exceed anticipated moneys available to meet those expenditures, the governor by executive order may reduce the allotments on file in the office of the state auditor for any department, office or institution of the state; provided, that no reduction of allotments for the elective officers in the executive department shall be made to a level which prohibits the discharge of constitutional duties and provided that no reduction of allotments for the legislative and judicial departments shall be made without the permission in writing of the head of such department...."
    I.C. § 67–3512A (Supp.1986).

Mr. Broker testified that following the allocation process all appropriated funds were allocated to the CDDP; that none of the funds appropriated to the CDDP were allocated to other programs; and that the Department, after it became aware that funding would be inadequate to provide all the services they had hoped would be possible under the CDDP, decided that rather than transferring funds to the disabilities program from other appropriated programs, it would not renew contracts for services which expired and would not fill temporary and permanent positions which became vacant.

After a hearing on the matter, the court below ruled that respondents were entitled to judgment on the pleadings and issued written findings of fact and conclusions of law. The court made the following finding of fact, among others:

"7. Defendants assert that all funds appropriated by the legislature for the community developmental disabilities program have been allocated to that program, that the funds so appropriated have been reduced by legislative and federal action, and that transferring funds from other programs would reduce the services provided by the other programs. However, on the basis of the pleadings, and Departmental documents obtained through discovery the Court finds there are funds available for the provision of the services being denied Plaintiffs in other Department programs."

Also, included in the conclusions of law, were the following:

"3. While the Department and its officials have discretion as to how to allocate available funds so as to best carry out the mandate of I.C. 39–406 *et. seq.*, they have no discretion as to **whether** to provide such services to eligible developmentally disabled citizens. They must.

"4. There are funds available to the Department which are spent on services which are not statutorily mandated, as are community developmental disability services.

"5. If funds allocated to the Community Developmental Disabilities Program are insufficient to provide services to eligible developmentally disabled children, the Defendants must draw upon funds being used for non-mandated purposes."

The court then issued a Writ of Mandamus and enjoined the Department from discontinuing disability benefits to respondents.

█ A Writ of Mandamus is not appropriate unless the party seeking it has a clear legal right to have the act done for which he seeks the writ, and it is the clear duty of the officer to act. *State ex rel. Williams v. Adams*, 90 Idaho 195, 202, 409 P.2d 415, 422 (1965). I.C. § 39–4601, *et. seq.*, imparts a clear statutory duty upon the appellants to provide respondents with the treatment and services which have been discontinued by the Department. The Act provides:

"**39–4605. duties of the department.**— The department shall provide appropriate services of habilitation and rehabilitation to the eligible population of developmentally disabled, and shall consult with the state council on developmental disabilities. The department shall be the primary agency responsible for the services set forth herein, and shall:

"...

"(2) Initiate and provide services which shall include, but not be limited to, community comprehensive developmental disabilities services; ..."

Because I.C. § 39–4605 states that the Department "shall" provide "comprehensive developmental disability services," and because I.C. § 39–4604(8) defines "comprehensive developmental disability system" as a system of services including "individualized developmental programs" among other things, respondents contend that appellants have failed to perform a mandatory duty and that the Writ of Mandamus and injunction issued below were appropriate remedies.

We note that the instant case is not one in which the legislature has directed an

administrative agency or other department within the executive branch to expend appropriated funds on a particular program and the agency or department has refused to do so in the manner directed. In the instant case, appellants have done as directed by the legislature and they have simply run out of funds.

The district court reasoned that because the Act provides the Department "shall" provide appropriate services to the developmentally disabled, the Department was required, when the appropriations for the CDDP were depleted, to transfer funds which had been appropriated to other non-mandatory programs back into the CDDP. However, such a transfer of funds from one appropriation to another, without legislative consent, is in violation of the Idaho Constitution. Article 7, § 13 of the Idaho Constitution provides: "No money shall be drawn from the treasury, but in pursuance of appropriations made by law." Interpreting this provision, we have defined an appropriation as "authority of the legislature given at the proper time and in legal form to proper officers to apply a specified sum from a designated fund out of the treasury for a specified object or demand against the state." *Blaine County Investment Co. v. Gallet*, 35 Idaho 102, 106, 304 P. 1066, 1070 (1922).

In *Gallet*, we reviewed an enactment of the legislature which empowered the Department of Reclamation to examine streams when the priority rights to them were being adjudicated, and provided further that itemized statements of the costs of such examinations and surveys, if presented to and allowed by the State Board of Examiners, were to be paid by the treasurer. We held in *Gallet* that inasmuch as the enactment did not purport to appropriate a particular sum, it violated § 13 of art. 7 of the Idaho Constitution. *Id.* at 108, 204 P. at 1072.

> "As all appropriations must be within the legislative will, it is essential to have the amount of the appropriations, or the maximum sum from which the expenses could be paid, stated. This legislative power cannot be delegated nor left to the recipient to command from the state treasury sums to any unlimited amount for which he might file claims. True, the exact amount of these expenses cannot be ascertained nor fixed by the legislature when they have not yet been incurred, but it is usual and necessary to fix a maximum ... specifying the amount above which they cannot be allowed." *Id.* at 106–07, 204 P. at 1070–71, quoting *State ex rel. Davis v. Eggars*, 29 Nev. 469, 91 P. 819, 824 (1907) (Nevada Constitution provided: "No money shall be drawn from the treasury but in consequence of appropriations made by law.").

We have also held that "no money may lawfully be paid from the treasury except pursuant to and in accordance with an act of the Legislature, expressly appropriating it to the specific purpose for which it is paid." *Epperson v. Howell*, 28 Idaho 338, 343–44, 154 P. 621, 623 (1918). *Accord State v. Ex rel. Williams, supra.*

The instant case is distinguishable from *Williams v. State Legislature of Idaho*, 111 Idaho 156, 722 P.2d 465 (1986), where we held that the legislature could not prohibit the state auditor from performing constitutional duties through the use of a line-item appropriation. Here, the duty imposed upon the Department derives from a legislative enactment, not the Idaho Constitution. Although the Act mandates the provision of "appropriate services" by the Department, it leaves the legislature unfettered with regard to the extent of funding, if any, for the CDDP. Finally, "[w]elfare benefits are not a fundamental right and neither the State or Federal government is under any sort of constitutional obligation to guarantee minimum levels of support." *Lavine v. Milne*, 424 U.S. 577, 584, n. 9, 96 S.Ct. 1010, 1015, n. 9, 47 L.Ed.2d 249 (1976).

The order of the district court below directing the Department to transfer funds appropriated to non-mandatory programs to the CDDP was error. It directed the Department to do that which our Constitution forbids. Mandamus will not lie in such circumstances.

Reversed and remanded.

Costs to appellant.

No attorney fees on appeal.

SHEPARD, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

My second vote would be to affirm the judgment of the district court, and utilize Judge Rowett's opinion as the opinion for the Court, and at the same time endorse with approval the well-written opinion of the Hon. Gerald F. Schroeder in *Woods v. Dept. of Health & Welfare*, District Court, Ada County (1981). Even though but six years elapsed between the two opinions, I would also accord at least a limited stare decisis effect to what Judge Schroeder wrote, especially where there was no appeal—which is likely attributable to Mr. Thomas L. Purce's respect for Judge Schroeder's ability.

My first vote is to dismiss the appeal as moot. We are now well into the fiscal year 1987-88, and the Dept. of Health & Welfare is now operating on the money appropriated to it by the 1987 legislature. It is a reasonable presumption that the increase of appropriations generally has taken care of the problem which generated this lawsuit, and that it will not occur again. The Respondent's brief informs us that the state made the payment mandated by law, and ordered by Judge Rowett, apparently discovering some available fiscal year 1986-1987 funds.

I see little in the proposed majority to commend it. On the contrary, I readily agree with the views of Judge Rowett and Judge Schroeder, and the excellent brief submitted by counsel representing the disadvantaged children. The members of this Court should allow themselves to be guided by the language of Judge Schroeder. We are not dealing in principles of abstract law, but with the future of three real live persons who happen to be little children:

> There has unfortunately developed an adversary situation between the Department and the plaintiff, a disabled child, that threatens to lead the two litigants down the path of legal adjudication to the exclusion of a proper resolution of a very human problem.... Hopefully the interest of the fray will not cause either the child's representatives or representatives in the Department to forget the human condition that might be dealt with properly by imaginative minds working toward the same end. Per Judge Schroeder's Memorandum Decision and Order, p. 5.

An examination of the case of *Epperson v. Howell*, now 71 years of age shows no applicability.[1] Likewise, I very much doubt

1. 28 Idaho 338, 154 Pacific 621 (1916). The facts and holdings of that case are found in three paragraphs on p. 343 and 344, which for facility are:

> No appropriation of money has been made with which to pay the state's proportion of the expense of giving emergency employment, and it is urged by defendants that the chapter is unconstitutional because it conflicts with sec. 13, art. 7, of the constitution, which is as follows: "No money shall be drawn from the treasury, but in pursuance of appropriations made by law."
>
> An appropriation, within the meaning of the section of our constitution last above quoted is authority from the legislature expressly given in legal form, to the proper officers, to pay from the public moneys a specified sum, and no more, for a specified purpose, and no other. It follows that no money may lawfully be paid from the treasury except pursuant to and in accordance with an act of the legislature expressly appropriating it to the specific purpose for which it

is paid. No money having been appropriated for that purpose, the state is as effectually precluded by sec. 13, art. 7, from paying its proportionate share of the expense of giving emergency employment as is the county from retaining it from the state treasury by sec. 7, art. 7, of the constitution. (*Kingsbury v. Anderson*, 5 Ida. 771, 51 Pac. 744; *Kroutinger v. Board of Examiners*, 8 Ida. 463, 69 Pac. 279; and *Jeffreys v. Huston*, 23 Ida. 372, 129 Pac. 1065.)

> Our attention is also directed to the fact that no provision is made for the submission of claims against the state, arising out of emergency employment, to the state board of examiners, but, upon the other hand, payment of funds belonging to the state, without such examination, is attempted to be provided for. This feature of the chapter is in contravention of sec. 18, art. 4, of the constitution, which grants to that board power to examine all claims against the state, except for salaries or compensation of officers fixed by law. (*Winters v. Ramsey*, 4 Ida. 303, 39 Pac. 193.).

that the Court should base its decision on the *Gallett* case—which like *Epperson* apparently was based on different statutory law than is now in existence. Admitting to not being knowledgeable as to how things are done in the Executive Department, in the Legislative Department, or even in the Judicial Department, I do have a general feeling that in the latter named department, specific application of funds as needed, or desired, is not subject to scrutiny by either of the other departments. If so, *Gallett* is inapplicable, assuming also that no single department of the three branches of the government is entitled to preferential fiscal treatment not accorded the other two.

The real basis of the majority opinion is that mandamus is not an available remedy in the circumstances here presented. Closer attention to the opening sentence of Judge Rowett's opinion would, perhaps, have benefited those in the majority. "Plaintiffs brought suit, seeking relief in the form of an alternative writ of mandate, peremptory writ of mandate, *declaratory judgement*[2] and injunctive relief." Time after time, at least when the mood is right, this Court's opinions declare that we do not exalt form over substance. Just as in the *Woods* case decided by Judge Schroeder, there was a genuine issue presented which had to be decided, and was decided. To turn the minor plaintiffs away on the pretext that they improperly brought a *mandamus* action is ludicrous. While it is an easy disposition of the appeal, it is not a fair dispensing of justice.

Attached hereto, and adopted as my views of the facts and law here involved, are the written decisions of Judge Schroeder and Judge Rowett.

### APPENDIX

In the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada

John Jessen Woods, by and through his parents and next friends John Clare Woods and Janice Lee Woods, Plaintiff,

The Idaho Department of Health and Welfare;

Thomas L. Purce, individually and in his official capacity as Director of the Idaho Department of Health and Welfare;

Lawrence Coleman, individually and in his official capacity as Regional Services Manager for Region IV of the Idaho Department of Health and Welfare, Defendants.

Case No. 74139

Oct. 27, 1981.

### MEMORANDUM DECISION AND ORDER

The above-named matter is an action for declaratory judgment brought pursuant to I.C. § 67–5207 of the Administrative Procedure Act whereby the plaintiff seeks a determination that a policy of the Department of Health and Welfare relative to the placement of developmentally disabled persons is invalid. The plaintiff is a developmentally disabled thirteen year old boy who seeks placement in a small, community group living facility. The Department proposes placement of the plaintiff in the Idaho State School and Hospital in Nampa. At issue is the validity of the Department policy that precludes the placement sought by the plaintiff in the absence of federal funds. A review of the record is helpful.

The plaintiff filed his complaint for declaratory judgment on January 16, 1981, alleging that he is a developmentally disabled person who requires special living

---

**2.** As will be noted, Judge Schroeder's decision was based on an application for declaratory relief.

arrangements in a small group living facility integrated into the community and that placement in the Idaho State School and Hospital would be harmful to him. He alleges that an appropriate facility, Challenge Group Home, is available but that the Department has a policy of making such placements only when the arrangement is funded under the Social Security Act. He challenges this policy of the Department.

The defendants filed their answer February 5, 1981, in which they deny the plaintiff's claims. They assert that Challenge Group Home is not an appropriate placement within the meaning of the statute, that the plaintiff requires a more restrictive placement, that the Department's contract with Challenge Group Home does not provide for services for the mentally retarded, and that placement of the plaintiff in that facility would preclude placement of another child. They also maintain that the statute requires appropriate services of habilitation but not the best or most expensive services, that the legislature has not appropriated funds for the placement the plaintiff seeks, and that the Department has a plan for developmental and disability services and has made services available to the plaintiff in compliance with the statute.

The plaintiff moved for summary judgment August 5, 1981, supporting his motion by affidavit. The defendants filed a cross-motion for summary judgment August 20, 1981, also supported by affidavits.

While the defendants deny in their answer that they have a policy precluding placements of the developmentally disabled in community based group homes absent federal funds, they proceed on the motions for summary judgment on the basis that the Department does in fact have such a policy. See Brief in Opposition to Plaintiff's Motion for Summary Judgment, pp. 5, 9, 13.

"The Department has chosen to provide community residential placements for developmentally disabled persons where Title XIX federal funds are available to pay for the placements. The Department has chosen not to utilize other funds for that purpose because those funds are being utilized for other programs." Supplement to Defendant's Brief, p. 2.

Therefore, this court will proceed on the basis that such a policy exists as the facts and arguments indicate. Both parties have argued the underlying merits of the case; that is, where should this little boy be placed? However, the court will not reach that question at this time. The first inquiry must be whether the Department has improperly precluded itself from the consideration of alternatives by a fiscal policy that violates the mandates of the state legislature.

Idaho Code Section 39–4605 provides as follows:

Duties of the department: The department shall provide appropriate services of habilitation and rehabilitation to the eligible population of developmentally disabled, and shall consult with the state council on developmental disabilities. The department shall be the primary agency responsible for the services set forth herein, and shall:

1. Develop and prepare an annual plan for the initiation and maintenance of developmental disabilities services authorized in this chapter. Such services shall include, but not be limited to community comprehensive developmental disability services;

2. Initiate and provide services which shall include, but not be limited to, community comprehensive developmental disabilities services;

3. In order to provide services, enter into agreements with any person or persons, corporation or association, approved by the department, for the contracting of all or a portion of the costs(,) the care, treatment, maintenance, support and training of developmentally disabled persons; and

4. Provide technical assistance for state and local personnel working in the field of developmental disabilities under this chapter.

Any person, corporation or association may make application to the department

for approval and certification of the applicant's developmental disabilities facility. The department may either grant or deny certification or revoke certification previously granted after investigation of the applicant's facilities, to ascertain whether or not such facilities are adequate for the health, safety, and the care, treatment, maintenance, training and support of developmentally disabled persons, in accordance with standards as set forth in rules and regulations promulgated by the Board of Health and Welfare and consistent with existing national accreditation bodies.

The defendants argue that the provisions of Idaho Code 39-4601 are merely directory, not mandatory. The Department is wrong. The language is mandatory, stating that the Department "shall" do the things set forth in the statute. It is a specification of duties. That fact has been recognized by the Department in its State Plans for Community Developmental Disabilities Programs for fiscal years 1981 and 1982 (Plaintiff's exhibits #1 and #2, admitted without objection). In its plans the Department recognizes that there are mandatory duties under the act, contrary to its assertion at this time that the act is merely directory as a statement of policy by the legislature (Exhibit #1, p. 89; Exhibit #2, p. 69). If portions of the act are mandatory, as acknowledged by the Department in its statements of policy, clearly those duties set forth in I.C. 39-4605 are mandatory.

This is not a case of the court trying to run the Department, as suggested by the defendants, except as the court is called upon to interpret legislative purpose. The legislature determined that the Department shall initiate and provide comprehensive developmental disability services. There is no authorization for conditioning these services upon the availability of Title XIX funds for the payment of placements. Therefore, the policy that precludes placement of the plaintiff in a community based group home by reason of a lack of Title XIX funds is invalid. This is not a dictate that the Department make a particular placement but a determination that it may not use the state policy as a basis for the determination.

The court does not reach the question of the appropriate placement at this time and reserves the question of whether it may or should enter this realm. The Department argues that there is a question of fact concerning the propriety of placement in defense of its decision to use the State School and Hospital. That may be, but it appears that if the facts submitted in opposition to the plaintiff's motion for summary judgment are lined up against those submitted by the plaintiffs at trial it is most likely that a determination would be made that the Department is presently committed to a position that would be harmful to a child for which it has responsibility as indicated by the legislature. There has, unfortunately developed an adversary condition between the Department and the plaintiff, a disabled child, that threatens to lead the two litigants down the path of legal adjudication to the exclusion of a proper resolution of a very important human problem. In its brief the Department makes the following statement: "If this court were to order the Department to pay for plaintiff's placement at Challenge Group House the Department would request guidance as to where the money should come from to make such a placement." The court, of course, hopes that this case will not develop to the point of being asked to adjudicate a specific placement. The Department would most likely be more unhappy with an acceptance of the offer to determine its financial organization than with its own determination pursuant to sound fiscal planning in accordance with the dictates of the legislature, consistent with the best interests of this child, its legal and ethical responsibility. Hopefully the interest of the fray will not cause either the child's representatives or representatives in the Department to forget the human condition that might be dealt with properly by imaginative minds working toward the same end.

The plaintiff's motion for summary judgment is granted to the extent that the Department's policy is declared void that limits placements in community based

group homes to those cases in which Title XIX funds are available.

DATED this 27 day of October, 1981.

/s/ Gerald F. Schroeder
Hon. Gerald F. Schroeder
District Judge

Coalition of Advocates for the Disabled

1510 West Washington

Boise, ID 83702

Phone: (208) 336-5353 (TDD)

J. Brent Marchbanks, Attorney for Plaintiffs

In the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada

Trin George, by and through her next friend and mother Bonnie George, Michael Fodge, by and through his next friend and father Kermit Fodge, and Lucas Mead, by and through his next friend and mother Pamela Mead, Plaintiffs

v.

Rose Bowman, individually and in her official capacity as Director of the Idaho Department of Health and Welfare, John Morgan, individually and in his capacity as Director of the Division of Community Rehabilitation, John Evans, in his official capacity as Governor, and The Idaho Department of Health and Welfare, Defendants

No. 88819

March 31, 1986

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

Plaintiffs brought suit, seeking relief in the form of an alternative writ of mandate, peremptory writ of mandate, declaratory judgement and injunctive relief. This court issued an alternative writ of mandate on January 23, 1986, directing Defendants to comply with the writ, or to show cause on February 14, 1986, why they should not be enjoined from refusing to provide appropriate individualized developmental programs and treatment services to Plaintiffs.

Defendants appeared on February 14, 1986, and answered the writ by filing a motion for summary judgement with an accompanying brief, the affidavit of Mr. Gary Broker, a copy of Idaho Senate Bill No. 1308 and Idaho Executive Order # 85–20. It was stipulated between the parties that these documents would constitute the Defendants' "pleadings" in this matter.

Plaintiffs filed a motion for judgement on the pleadings which was heard on March 17, 1986, immediately prior to the time set for trial. Concurrently, Plaintiffs orally moved for leave to amend their pleadings to include counts for money damages.

The Court having reviewed the pleadings, memoranda and responses to discovery in this case, and having considered the arguments of counsel, it hereby makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. At all times relevant to this action, Defendants Bowman, Morgan and Evans are and have been residents of Ada County, Idaho. The Defendant Idaho Department of Health and Welfare (hereinafter "Department") is an agency of Idaho State government, with administrative offices in Boise, Idaho. Rose Bowman is the Director of the Department, John Morgan is the administrative head of the Department's Division of Community Rehabilitation. John Evans is Governor of the State of Idaho.

2. Plaintiffs Michael Fodge, Lucas Mead and Trin George are handicapped children.

3. Michael is two years old and has cerebral palsy. He has spasticity and is severely delayed in his gross motor and speech development. Michael needs and would benefit from an individualized developmental program, including Developmental Therapy, Occupational Therapy and Speech Therapy. He previously received some of the individualized developmental treatment services he needs from the Department,

through the Adult and Child Development Center in Coeur d'Alene, Idaho. The Defendants now refuse him any and all developmental disability service.

4. Lucas Mead resides in Bonners Ferry, has Down's Syndrome and is diagnosed as mentally retarded. He is an active learner, and would benefit from developmental disability programs and treatment services including Developmental Therapy, Occupational Therapy and Speech/Language Therapy. He previously received these services from the Department. They now refuse him any such services.

5. Trin George lives in Kellogg, is five, and has Rett's Syndrome, a condition which causes functional limitation much like cerebral palsy. She cannot walk, talk or eat independently. Trin would benefit from Speech and Physical Therapy. The Department previously provided Speech Therapy to Trin. The Department now refuses to provide that service to Trin.

6. The disabling conditions of each Plaintiff is attributable to an impairment, such as mental retardation, cerebral palsy or similar conditions, which is expected to continue indefinitely, and constitutes a substantial handicap to such person's ability to function normally in society, particularly in the areas of language, learning, mobility, capacity to live independently and earning a living. The impairments reflect a need for interdisciplinary care and treatment, individually planned, for an extended duration. Each of the plaintiffs' need for such services was determined through the "Multidisciplinary Treatment Team" process of the Department, which is the standard procedure used by the Department to determine developmental disabled citizens' need for service.

7. Defendants assert that all funds appropriated by the legislature for the community developmental disabilities program have been allocated to that program, that the funds so appropriated have been reduced by legislative and federal action, and that transferring funds from other programs would reduce the services provided by the other programs. However, on the basis of the pleadings, and Departmental documents obtained through discovery the Court funds there are funds available for the provision of the services being denied Plaintiffs in other Department programs.

## CONCLUSIONS OF LAW

1. Plaintiffs are "developmentally disabled" as that term is defined in I.C. 39-4601 *et seq.*, the Idaho Developmental Disability Services and Facilities Act. As developmentally disabled citizens of Idaho, Plaintiffs are entitled under that Statute, to comprehensive developmental disability services from the Department, including individualized developmental programs of the type currently denied them.

2. Defendants Bowman, Morgan and the Department are already bound by this Court's (J. Schroeder's opinion) in *Woods v. Idaho* #74139 (1983), that the provision of I.K.C. 39-4601 *et. seq.* are mandatory upon the Department and its officials.

3. While the Department and its officials have discretion as to how to allocate available funds so as to best carry out the mandate of I.C. 39-4601 *et. seq.*, they have no discretion as to whether to provide such services to eligible developmentally disabled citizens. They must.

4. There are funds available to the Department which are spent on services which are not statutorily mandated, as are community developmental disability services.

5. If funds allocated to the Community Developmental Disabilities program are insufficient to provide services to eligible developmentally disabled children, the Defendants must draw upon funds being used for non-mandated purposes.

6. That the Plaintiffs' legal right to community comprehensive developmental disabilities services is enforceable by

them through writ of mandate and injunction.

Dated this 27 day of March, 1986.

/s/ Robert M. Rowett
District Judge

## ON REHEARING

JOHNSON, Justice.

Following the granting of a rehearing in this action, the case was argued before the Court. We continue to adhere to the views expressed and the conclusions reached in the earlier opinion of the Court.

Since appellants have acknowledged that they have fulfilled the mandate of the district court and are not now denying services to the three youngsters involved, this matter might be considered to be moot. *Downing v. Jacobs,* 99 Idaho 127, 578 P.2d 243 (1978). However, we deem the issues presented here to be of substantial public interest, and, therefore, do not dismiss. *Robinson v. Bodily,* 97 Idaho 199, 200, 541 P.2d 623, 624 (1975); *School District No. 351 Oneida County v. Oneida Education Association,* 98 Idaho 486, 567 P.2d 830 (1977).

Respondents have asserted on rehearing that I.C. § 67–3511(2) provides authority for the transfer of appropriations from one program to another within a budgeted agency such as the Department. The statute provides as follows:

**67–3511. Transfer of appropriations.—**

. . . .

(2) Appropriations may be transferred from one program to another within a budgeted agency, as appropriated, upon application duly made by the head of any department, office or institution of the state (including the elective officers in the executive department and the state board of education) and approval of the application by the administrator of the division of financial management and the board of examiners provided the requested transfer is not more than ten per cent (sic) (10%) cumulative change from the appropriated program amount. Requests for transfers above ten per cent (sic) (10%) cumulative change must, in addition to the above, be approved by law.

This statute was not considered by the district court in issuing its Writ of Mandamus. Even if the district court had considered it, this statute would not have authorized the district court to have mandated a transfer of appropriations. The statute requires approval of the application for transfer by the administrator of the division of financial management and the board of examiners. These officials are not parties to this action, and therefore, could not have been compelled to approve the transfer. Despite respondents' arguments to the contrary, the members of the board of examiners, including the attorney general, have been named as defendants when their action was required to grant the relief sought. *E.g., Jewett v. Williams,* 84 Idaho 93, 369 P.2d 590 (1962). In any event, since the approval of the administrator of the division of financial management and the board of examiners would be a discretionary act, mandamus would not be available to require them to approve the transfer. *State ex rel. Williams v. Adams,* 90 Idaho 195, 202, 409 P.2d 415, 419–20 (1965).

The Social Services Block Grants (Title XX) asserted by respondents to be an available source for funding the services sought by respondents show on their face that they are not available for services under the CDDP.

There being no reason to change our prior opinion, it shall stand as issued.

Costs to appellants.

No attorney fees on rehearing.

SHEPARD, C.J., and BAKES, J., concur.

BISTLINE, Justice, dissenting.

Nothing in the foregoing majority opinion issued after rehearing persuades me any more than did the initial majority opinion of October 1987. There is aught yet to be shown, other than that the department

of Health and Welfare acted voluntarily in renewing services to the three children who are plaintiffs. Health and Welfare appealed Judge Rowett's decision, thus getting the benefit of an automatic stay by virtue of the Supreme Court rules, and, being a state agency Health and Welfare could have had a stay throughout the appeal simply by moving for one. That being so, the correct rule of law is that one who complies with a judgment voluntarily has relinquished any right of appeal. For a host of authority on the subject see the dissenting opinion of Justice Shepard, joined by Justice Donaldson, in *Radioear Corporation v. Crouse*, 97 Idaho 501, 547 P.2d 546 (1975). For an unusually strong similar holding in a criminal context, but not cited by Justice Shepard, see *McFarland, Prosecutor v. Hunt, District Judge*, 79 Idaho 262, 313 P.2d 1076 (1957).

We must have been made aware of the mootness of the case last year, as otherwise I would have voted to dismiss the appeal on that basis. At that time I was not aware of any "substantial public interest" in the controversy, and rather thought it a pity that there was not. Nor have I been made aware of another prong of the ordinary standard which mitigates against a mootness dismissal, *i.e.*, the fact that it is likely to be a recurring problem—as seemed to be so in *Oneida County v. Oneida Education Ass'n.*, 98 Idaho 486, 567 P.2d 830 (1977). I am gratified that one other member of the Court has now courteously responded to my suggestion of mootness. That mootness, however, should have precluded our first set of opinions.

The plaintiffs/respondents' supporting brief of petition for rehearing attached hereto as Exhibit A, which was filed on behalf of the three children further convinces me. I am not persuaded to alter my views previously expressed in October of 1987.

HUNTLEY, Justice, dissenting.

I must respectfully dissent for the reasons expressed in the dissent by Justice Bistline to the original opinion of the Court.

At a minimum, I would remand for further proceedings to resolve whether there were funds available to apply to the subject program. The trial court made the following finding:

> However, on the basis of the pleadings, and Departmental documents obtained through discovery the Court finds there are funds available for the provision of the services being denied Plaintiffs in other Department programs.

The trial court also correctly entered the following two Conclusions of Law:

4. There are funds available to the Department which are spent on services which are not statutorily mandated, as are community developmental disability services.

5. If funds allocated to the Community Developmental Disabilities program are insufficient to provide services to eligible developmentally disabled children, the Defendants must draw upon funds being used for non-mandated purposes.

The majority opinion casts this Court in the position of finding facts to the contrary.

I am, likewise, not impressed with the argument that not enough defendants were specifically named to mandate action. The claim, in essence, is that the State of Idaho, which acts only through human beings, is improperly withholding services. The three individuals sued (including the Governor) plus the entire Department of Health and Welfare, would seem to constitute adequate representative defendants to bring the State before the Court.

BISTLINE, J., concurs.

EXHIBIT A

MEMORANDUM IN SUPPORT OF
PETITION FOR REHEARING

I

In reversing and remanding Judge Rowett's decision in this case this Court ruled

that to require the Appellant Department of Health and Welfare to transfer funds appropriated by the State Legislature to the Department for other programs to "mandatory" services for developmentally disabled children would violate Article 7, Section 11 of the Idaho Constitution. Respondents respectfully assert that the Court has misread the factual record of the case as to relevant legislative appropriations.

The record in the case demonstrates that certain funds were appropriated to the Appellant without a specific purpose, and which were legally available to fund the disability-related therapies sought by the Respondents and mandated by the Legislature.

## II

The factual record of the case before the Court, including Appellants' response to discovery, demonstrates that Appellant received a legislative appropriation for "Social Services," consisting of federal Title XX Block Grant funds. The services that can be financed by the Social Services Block Grant include therapies for disabled children.

The appropriation legislation itself (which is a part of the record) reveals that the block grant funds were appropriated to the Appellant without specification that any particular social service be funded thereunder. Since the authorized uses of these federal funds include therapies for developmentally disabled children, the District Court's Order can hardly be said to violate Article 7, Section 11 of the Idaho Constitution.

## III

The Court's opinion indicates that it relied upon the District Court's Findings of Fact in concluding that the District Court's order would require the Appellant to re-allocate funds from purposes to which the Legislature has specifically appropriated funds. This Court cites Findings 4 and 7 (that the Appellant is spending money on non-mandatory programs) and Finding 5 (that the Appellant is required to draw on funds being spent on non-mandated programs to fund mandated programs), to conclude that a necessary result of the District Court Order is that funds would be taken from one specifically appropriated purpose to another. This is not so. There are at least two appropriations which the Legislature gave Appellant to fund such services (the Community Developmental Disabilities Program and the Block Grant funds).

Judge Rowett made no specific finding that the "non-mandated" programs that the Appellant could draw upon were those funded under the Block Grant. However, such a finding would not have been relevant to the argument below. No reference to the Constitutional argument made by the Appellant on appeal, exists in the record.

Evidence in the record **does** document that non-appropriated, non-mandated, non-enforceable activities, such as day care licensing, were being funded by the Social Services Block Grant funds.

## IV

For these reasons, the interests of justice will be served by the granting the Motion For Rehearing.

Respectfully submitted this 7 day of October, 1987.

/s/ J. Brent Marchbanks
J. Brent Marchbanks
Attorney for Respondents